James E. ARNOLD, Deborah C. Arnold, Plaintiffs,

v.

KRAUSE, INC., Home Depot, Inc., and Home Depot U.S.A., Inc., Defendants.

No. 00–CV–500A(F).

United States District Court, W.D. New York.

July 23, 2004.

**61**

Amigone, Sanchez, Mattrey & Marshall, LLP (Richard A. Clack, of Counsel), Buffalo, NY, for the Plaintiffs.

Feldman, Kieffer & Herman, LLP (Mary Jo Herrscher, of Counsel), Buffalo, NY, for the Defendants.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

## JURISDICTION

This case was referred to the undersigned for all pre-trial matters by order dated September 10, 2001 (Doc. No. 7). It is presently before the court on Defendants' motion, pursuant to Fed.R.Civ.P. 37(b)(2)(B) and (c)(1), to preclude Plaintiffs' expert testimony and for summary judgment pursuant to Fed. R.Civ.P. 56, filed October 28, 2003 (Doc. No. 18), and Plaintiffs' motions filed December 2, 2003 (Doc. No. 23) seeking an enlargement of the time within which to designate testifying experts and file reports and to extend the period for discovery, and January 5, 2004 (Doc. No. 26) for entry of default judgment against Defendants.

## BACKGROUND

Plaintiffs James E. Arnold ("Arnold") and his wife, Deborah C. Arnold ("Mrs.Arnold") (together, "Plaintiffs"), commenced this prod-ucts liability action seeking monetary damages for personal injury and consortium loss, on May 12, 2000, by filing a summons and complaint in New York Supreme Court, Erie County. In particular, Plaintiffs allege defective design and breach of implied warranty based on injuries suffered when a 16–foot aluminum multimatic extension ladder manufactured by Defendant Krause, Inc. ("Krause"), and distributed by Defendants Home Depot, Inc. and Home Depot U.S.A., d/b/a The Home Depot, collapsed while Arnold was climbing it to assist a neighbor in gaining access to the neighbor's locked residence through a second-story window. Plaintiffs maintain the ladder collapsed when Arnold was using the ladder in its expected and intended manner, but that the ladder was defectively manufactured, designed and assembled which caused one of the six hinges or locking clips to break, resulting in the ladder's collapse and Plaintiffs' injuries. Defendants maintain that Arnold's use of the ladder was inconsistent with the instructions affixed to the ladder and that such misuse caused the ladder to collapse.

Defendants removed the action to this court by petition filed June 8, 2000 (Doc. No. 1) based on this court's diversity jurisdiction. 28 U.S.C. § 1441(c). A stay of proceedings pursuant to Bankruptcy Code Section 362(a), as a result of a bankruptcy petition filing by Defendant Krause on June 13, 2000, was noted at a status conference conducted by District Judge Richard J. Arcara on June 13, 2001. (Doc. No. 6). On August 16, 2001 the court was informed by counsel to the parties that the stay had been modified by the Bankruptcy Court to permit litigation in the instant case to proceed to the extent of available insurance coverage for Defendant Krause (Doc. No. 8).

Judge Arcara referred the matter to the undersigned to enter a scheduling order and for all pretrial matters on September 10, 2001 (Doc. No. 7). Pursuant to the District Court's referral order, following a Rule 16(b) conference with the parties on December 6, 2001, a case management order ("Scheduling Order") was entered (Doc. No. 11) establishing, as relevant, a fact discovery cut-off date of December 31, 2002, and June 12, 2002 as

the cut-off date for identifying Plaintiffs' testifying experts and providing reports pursuant to Fed.R.Civ.P. 26(a)(2). By letter dated September 13, 2002, the parties requested the court supervised settlement conference, as scheduled by the Scheduling Order for September 16, 2002, be rescheduled following completion of discovery.

By letter from Plaintiffs' counsel on behalf of both parties, dated December 26, 2002, ("Clack December 26th Letter"),[1] the parties requested an amendment of the Scheduling Order to enlarge, to June 30, 2003, the period for completion of fact discovery and to extend the date for expert disclosures "to an appropriate date within that deadline." Appendix A at 1. The letter also advised the court that Plaintiffs had responded to Defendants' interrogatories and document production requests that had been served the prior August, and that Defendants intended to depose Plaintiffs following an inspection of the ladder which was involved in Plaintiffs' claim. *Id.* at 1. Further, because he viewed the alleged manufacturing defect in the Krause ladder to be "clear-cut," Plaintiffs' counsel stated he expected to engage in settlement discussions with Defendants after completion of such discovery, and that if such settlement discussions were not successful in resolving the case, Plaintiffs' counsel would proceed with "further discovery ... of the defendants." *Id.* at 2. Based on the parties' request, the court filed on January 3, 2003, an amended scheduling order for good cause setting June 30, 2003 as the cut-off for all discovery and March 17, 2003 for disclosure of Plaintiffs' testifying experts and May 5, 2003 for Defendants' expert disclosures (Doc. No. 16) ("Amended Scheduling Order").

By letter to the court dated June 26, 2003 (Doc. No. 17) ("Clack June 26th Letter"),[2] Plaintiffs advised that as Defendants were not then interested in settlement, necessitating Plaintiffs to further proceed with discovery, and that as Plaintiffs had not detained an expert, a further amended scheduling order was requested. Clack June 26th Letter at 2. Defendants did not oppose the request.

Affidavit of Mary Jo Herrscher, Esq. in support of Defendants' Motion for Preclusion and for Summary Judgment, dated October 28, 2003 (Doc. No. 21) ("Herrscher Affidavit") ¶ 18. The request was granted and an amended scheduling order establishing December 31, 2003, as the fact discovery cutoff and September 15, 2003 for disclosure of Plaintiffs' testifying experts was entered. (Doc. No. 16) ("Second Amended Scheduling Order"). At the foot of the Second Amended Scheduling Order appeared the following: "NO FURTHER AMENDMENTS TO THIS SCHEDULING ORDER WILL BE PERMITTED."

On October 28, 2003, Defendants filed a motion, pursuant to Fed.R.Civ.P. 37(b)(2)(B) and (c)(1), to preclude Plaintiffs' expert testimony and, pursuant to Fed.R.Civ.P. 56, for summary judgment. In support of their motion, Defendants' filed on October 28, 2003 the Herrscher Affidavit, the Affidavit of Edwin G. Burdette, Ph.D., Defendants' expert dated October 13, 2003 (Doc. No. 20) ("Burdette Affidavit") and a Memorandum of Law in Support of Defendants' Motion for Summary Judgement (Doc. No. 19) ("Defendants' Memorandum"). Plaintiffs served various discovery requests on November 25, 2003, to which Defendants failed to respond. Clack Affidavit ¶ 26.

On December 2, 2003, Plaintiffs filed a motion requesting extension of the date for Plaintiffs to disclose their testifying expert established by the Second Amended Scheduling Order, for enlargement of the time within which to complete discovery, and pursuant to Fed.R.Civ.P. 56(f), for a period of discovery to enable Plaintiffs to oppose Defendants' motion for summary judgment (Doc. No. 23) ("Plaintiffs' Motion"). Attached to Plaintiffs' motion is Plaintiffs' Local Rule 56.1 Statement of Material Facts and the Affidavit of Richard A. Clack, Esq., dated December 2, 2003 ("Clack Affidavit"). On December 22, 2003, Defendants filed the Affidavit of Mary Jo Herrscher, Esq., in Further Support of Defendants' Motion for Preclusion and Sum-

---

1. A copy of the Clack December 26th Letter is attached as Appendix A to this Report and Recommendation and Decision and Order.

2. A copy of the Clack June 26th Letter is attached as Appendix B.

mary Judgment and in Response to Plaintiffs' Motion to Extend Discovery (Doc. No. 25) ("Herrscher Reply Affidavit"). On January 6, 2004, Plaintiffs filed the Reply Affidavit of Richard A. Clack, Esq., (Doc. No. 27) ("Clack Reply Affidavit").

On January 5, 2004, Plaintiffs filed a motion for a default judgment against Defendants for failing to provide discovery in response to Plaintiffs' requests and in accordance with the Scheduling Order and Second Amended Scheduling Order, and to attend depositions or, alternatively, for a court order compelling Defendants to provide Plaintiffs with the requested discovery and to appear for depositions. (Doc. No. 26) ("Plaintiffs' Motion for Default Judgment"). The motion was supported by the attached affidavits of Richard A. Clack, Esq. ("Clack Affidavit in Support of Default Judgment"), and exhibits A through F ("Plaintiffs' Default Motion Exhibit ____"). Defendants have not responded to Plaintiff's Motion for Default Judgment. Oral argument was deemed unnecessary.

Based on the following, Defendants' motion (Doc. No. 18) is GRANTED insofar as Defendants seek, pursuant to Fed.R.Civ.P. 37(b)(2)(B) and (c)(1), to preclude Plaintiffs' expert testimony and, should be GRANTED, insofar as Defendants seek summary judgment; Plaintiffs' motion, filed December 2, 2003 (Doc. No. 23), seeking an enlargement of the time within which to designate testifying experts and file reports and to extend the period for discovery, is DENIED, and Plaintiffs' motion, filed January 5, 2004 (Doc. No. 26), for entry of default judgment against Defendants, should be DENIED.

### FACTS [3]

According to Defendants, on August 13, 2002, Defendants served Plaintiffs with Defendants' First Set of Interrogatories, "Omnibus Demands" for medical treatment and employment record authorizations, witnesses, photographs, collateral source information and tax returns, a Notice to Inspect and Photograph the accused ladder and a Notice of Plaintiffs' depositions. Herrscher Affidavit ¶ 11. Defendants received Plaintiffs' in-

terrogatory answers on December 26, 2002 and, on December 27, 2002, Plaintiffs' responses to Defendants' Omnibus Demands. *Id.* ¶ ¶ 12–13. Because Plaintiffs' responses were received just prior to the December 31, 2002 cut-off for discovery established by the Scheduling Order, Defendants were unable to prepare for and schedule Plaintiffs' depositions before the December 31st cut-off and, accordingly, consented to the parties' first request seeking a further amended scheduling order. Herrscher Affidavit ¶ 14. Following receipt of Plaintiff James Arnold's relevant medical records, his deposition was conducted by Defendants on April 4, 2003. *Id.* ¶ 15. On April 10, 2003, Defendants' expert inspected the ladder at issue in the case. *Id.* ¶ 16.

Thereafter, in June 2003 Plaintiffs' attorney, Richard A. Clack, contacted Defendants to inquire about the possibility of settlement and was informed by Defendants' attorney that based upon the Defendants' expert's inspection of the ladder, and his review of Plaintiffs' discovery responses and deposition testimony regarding the circumstances of Plaintiff James Arnold's use of the ladder at the time of the accident and consequent injury, Defendants were "not then interested" in settlement, "particularly as Plaintiffs had not . . . responded to Defendants' expert witness disclosure demands." Herrscher Affidavit ¶ 17. As noted, *supra*, the Amended Scheduling Order required Plaintiffs' expert disclosure not later than March 17, 2003 (Doc. No. 14).

By letter to the court, dated June 26, 2003, Plaintiffs' attorney confirmed that, except with respect to Plaintiffs' expert disclosures, Plaintiffs had responded to Defendants' discovery demands, and had been advised that Defendants were "not interested [in settlement] at this time" notwithstanding Plaintiffs' counsel's "position that this is a case of clear-cut liability." Clack June 26th Letter, Appendix B herein. In the letter, Mr. Clack, as with his letter of December 26, 2002, Appendix A, represented that because in his opinion the case was one of "clear-cut liability" he had not retained an expert and that in

---

**3.** Taken from the pleadings and papers filed in this action.

light of Defendants' present disinterest in settlement it would be necessary for Plaintiffs "to proceed with discovery of the defendants." Clack June 26th Letter at 2. Because of the reported status of Plaintiffs' discovery, as described by Mr. Clack in his letter, Plaintiffs' counsel requested a further amended scheduling order extending through December 31, 2003, the period within which to complete discovery including required expert disclosures. *Id.* at 2. Defendants' counsel did not oppose Plaintiffs' request. Herrscher Affidavit ¶ 18.

In response, the court granted Plaintiffs' request by order, filed June 30, 2003, setting, as relevant, a new discovery cut-off date of December 31, 2003 and September 15, 2003 for disclosure of Plaintiffs' testifying experts (Doc. No. 16) ("Second Amended Scheduling Order"). Added, in bold capital letters, at the foot of the order's decretal clauses was the admonition that *"no further amendments to this scheduling order will be permitted."* Second Amended Scheduling Order at 2 (underlining added).

Nevertheless, Plaintiffs overlooked such admonition, Clack Affidavit ¶ 22, and also neglected to comply with the Second Amended Scheduling Order's September 15th deadline for Plaintiffs' expert witness disclosures. *Id.* ¶ 18. In fact, as of October 28, 2003, the filing date of the instant motion, Plaintiffs failed to conduct *any* discovery in this action. Herrscher Affidavit ¶ 30. Following Plaintiffs' counsel's realization that Plaintiffs' expert disclosure date, as required by the Second Amended Scheduling Order, had passed, Plaintiffs retained an expert, Stanley A. Kiska, P.E., on September 26, 2003.[4] Clack

Affidavit ¶¶ 18–19. While Mr. Clack expected to request, and obtain, Defendant's agreement to a modification of the Second Amended Scheduling Order enlarging time within which to complete discovery and for completing Plaintiffs' required expert disclosures, Defendants filed the instant motion requesting preclusion and summary judgment. Clack Affidavit ¶¶ 20–21. As noted, on November 25, 2003, nearly two years after entry of the initial Scheduling Order in the case, Plaintiffs served interrogatories and document production requests, a demand for witnesses, insurance coverage, "incident reports" and a deposition notice, seeking to complete discovery prior to the December 31, 2003 deadline established by the Second Amended Scheduling Order. *Id.* ¶ 26.

In support of Defendants' motion for summary judgment, Defendants' expert, Dr. Edwin G. Burdette, states that as a result of his examination of the accused ladder, Plaintiff's deposition testimony, color photographs of the accident scene including the position of the ladder at the time of the accident as recalled by the victim Plaintiff James Arnold during this deposition, that Plaintiff's "misuse" of the ladder, *i.e.*, that the ladder was set up against the opposing wall surface in a reverse position from the position recommended by Defendant Krause, was the primary cause of the ladder's failure and Plaintiff's resultant injuries were sustained when the ladder collapsed while he was ascending it. Burdette Affidavit ¶¶ 4–6; Herrscher Reply Affidavit ¶¶ 8–9; Affidavit of James E. Arnold dated December 2, 2003, Exhibit A to Clack Affidavit ¶¶ 11–12. Dr. Burdette also opined that contrary to Plaintiff's allega-

---

4. Attached as Exhibit B to the Clack Affidavit is the Affidavit of Stanley A. Kiska, P.E. ("Kiska Affidavit"). Kiska explains that he was first contacted by Clack on September 26, 2003, about serving as Plaintiffs' expert witness in this matter and agreed to do so. Kiska Affidavit ¶ 2. Clack then provided Kiska with the Krause Ladder Systems brochure that was included with the subject ladder when Arnold purchased it, as well as copies of papers filed in this action, including the pleadings and the transcript of Arnold's deposition, and photographs of the accident site. Kiska Affidavit ¶ 11. On November 3, 2003, Kiska traveled to Buffalo where he met with Clack and Arnold at the site of the accident, examined the subject ladder, and had some laboratory tests

conducted on a piece of a broken locking hinge from one of the ladder's locking mechanisms. *Id.* ¶ 12. Based on Kiska's examination of the ladder, photographs, laboratory findings, and relevant papers, it is Kiska's opinion "that the ladder in question either had a design or manufacturing defect at the time of the accident," *id.* ¶ 20, and that the accident was not the result of misuse by Arnold as Defendant Krause claims. *Id.* ¶ 21. Kiska further opines that even if Arnold set up the ladder backward, as Defendants maintain, "Krause does not adequately warn a user to set up the ladder facing in only one direction, even though it is a [*sic*] very foreseeable that the ladder could be used facing either way." *Id.* ¶ 21.

tions, the ladder manifested no defects in either design or manufacture that would render the ladder unmerchantable, unfit for its intended purpose or unreasonably dangerous for its expected uses. *Id.*

## DISCUSSION

In the interest of an orderly treatment of the issues presented on the motions before it, the court will first address, as nondispositive matters, Plaintiffs' motion to enlarge the time within which to disclose experts as provided in the Second Amended Scheduling Order and for an additional period of time to conduct discovery pursuant to Fed.R.Civ.P. 56(f) in order to oppose summary judgment.

### 1. *Modification of the Second Amended Scheduling Order.*

██ A request to modify a case management order entered pursuant to Rule 16(b) requires a showing of "good cause." Fed. R.Civ.P. 16(b); *Carnrite v. Granada Hospital Group, Inc.,* 175 F.R.D. 439, 447 (W.D.N.Y.1997). An attorney's excusable neglect does not constitute, for the purposes of Rule 16(b)'s requirements, good cause shown. *Carnrite, supra,* at 445. "Good cause" for amending a Rule 16(b) order requires that a party "demonstrate ... that despite their diligence the time table could not have reasonably been met." *Tschantz v. McCann,* 160 F.R.D. 568, 571 (N.D.Ind.1995). Here, despite the court's willingness to grant two amendments to the Scheduling Order at Plaintiffs' request, as agreed to by Defendants, to extend the period for completion of discovery in this case, including expert disclosure, Plaintiffs took no steps to initiate compliance until after the September 2003 deadline, also established at Plaintiffs' request, for Plaintiffs' expert disclosure passed, and they were served with Defendants' instant motions.

Plaintiffs' counsel offers in support of Plaintiffs' motion to modify the Second Amended Scheduling Order, a litany of personal commitments which arose after entry of the Second Amended Scheduling Order in June 2003, Clack Affidavit ¶ 17; however, none of the reasons, either individually or cumulatively, impress one as of such a nature

that an experienced litigator, like Mr. Clack, could not overcome with a modest degree of foresight and even a minimum amount of attention to the requirements of Plaintiffs' case, including the Second Amended Scheduling Order. Counsel's repeated rationale for his failure to comply with the discovery and expert disclosure deadlines established by the Scheduling Order, the Amended Scheduling Order and the Second Amended Scheduling Order, that counsel decided, for strategic reasons, to forgo discovery because he perceived that Defendants would quickly acquiesce in his view that Defendants' liability was "clear cut," and Defendants therefore would enter into an early settlement, was irrelevant to his obligation to comply with the court's orders, particularly the Second Amended Scheduling Order entered, at Plaintiffs' request, after Plaintiffs learned definitively that Defendants did not agree with counsel's view of the merits of Plaintiffs' claims.

Mr. Clack's assertion that his "mistake" in failing to conduct discovery and provide expert disclosure in compliance with the Second Amended Scheduling Order was "inadvertent," Clack Affidavit ¶ 29, is inconsistent with the fact, not disputed by Plaintiffs, that Mr. Clack last spoke with Ms. Herrscher sometime prior to June 26, 2003 and was advised by her that Defendants did not view the case as one of "clear liability." Clack Affidavit ¶ 13. Whatever counsel's reasons for hoping to avoid the burdens of discovery, misjudgments, even in good faith, regarding the strength of a client's case do not satisfy the requirement of good cause. *Lory v. General Electric Company,* 179 F.R.D. 86, 88 (N.D.N.Y.1998). Significantly, Mr. Clack does not represent, nor could he, that Defendants at any time misled him as to their litigation or settlement posture in this case. *Id.*

As the court in *Lory, supra,* aptly stated [Plaintiffs'] unfounded belief that settlement was likely affords no basis for a finding of good cause. The possibility of settlement is ever present in virtually all civil cases. Only in the rarest of cases will such a possibility suffice to demonstrate good cause, particularly where, as here,

the deadlines for disclosure were established after consultation with the parties, the parties were reminded of the deadlines midway through the discovery period, and [plaintiffs] made no effort to seek prior court approval for delayed [expert] disclosure.

*Lory, supra,* at 88 (citing *Carnrite v. Granada Hosp. Group, Inc.,* 175 F.R.D. 439, 445–46 (W.D.N.Y.1997)).

Counsel's admission, though commendably candid, that he made no effort to comply with any of the court's three scheduling orders' deadlines for completion of discovery, specifically, the Second Amended Scheduling Order after requesting it to facilitate Plaintiffs' discovery needs, including a supportive expert opinion, that he learned, based on Defendants' repeated refusal to acknowledge their liability, was then necessary, and that he also overlooked the court's specific warning that it would not entertain further amendments, underscores the extent of counsel's neglect. For the court to now say that it did not mean what it stated in the Second Amended Scheduling Order, as Plaintiffs' counsel's argument requests, would significantly undermine the court's authority and the reliance of counsel in other cases, subject to this court's scheduling orders, upon the integrity of such orders. *See Carnrite, supra,* at 447 ("If the courts do not take seriously their own scheduling orders who will?"). Certainly, counsel's failure to carefully read the Second Amended Scheduling Order, and particularly the court's stated dissatisfaction over the prior lack of diligence in Plaintiffs' prosecution of the action, as expressed in its unwillingness to grant further extensions, cannot be accepted as excusable attorney neglect or good cause.

### 2. *Request for Rule 56(f) Discovery*

■ Plaintiffs also move for an additional period within which to obtain discovery to oppose Defendants' summary judgment motion pursuant to Rule 56(f). First, as the record demonstrates, as of October 2003 when Defendants' motion was filed, Plaintiffs had nearly two years within which to obtain discovery and to avail themselves of the opportunity to retain the services of a qualified expert to support their products liability claims. As discussed, Discussion, *supra,* at 65–66, Plaintiffs make no persuasive argument that their failure to abide by the deadlines established by the court's scheduling orders was excusable and that they have established good cause for a modification of the Second Amended Scheduling Order, *nunc pro tunc,* to enable them to comply with their thrice court ordered expert disclosure obligations. Further, to justify a postponement of summary judgment to permit limited opposition discovery, the requesting party must establish "(1) a description of the particular discovery the movant intends to seek; (2) an explanation showing how that discovery would preclude the entry of summary judgment; and (3) a statement justifying why this discovery had not been or could not have been obtained earlier." *Baicken–McKee, Jansen & Carr,* FEDERAL CIVIL RULES HANDBOOK (2003 Thompson–West) at 885 (citing *Oneida Indian Nation of New York v. City of Sherrill,* 337 F.3d 139, 167 (2d Cir.2003)). Additionally, courts generally are "unlikely to grant such a request where the moving party has not been diligent in beginning discovery." *Baicken–McKee, Jansen & Carr, supra,* at 885 (citing cases).

■ Here, even assuming Plaintiffs can meet the first two elements to permit discovery pursuant to Rule 56(f), Plaintiffs have not submitted any persuasive explanation why the obtaining of expert discovery to oppose a potential summary judgment motion Defendants brought, within the cut-off established by the Second Amended Scheduling Order, could not reasonably have been obtained earlier and in compliance with the Second Amended Scheduling Order. Any desire to economize on Plaintiffs' expenses of litigation, including expert fees, should have been balanced against Plaintiffs' obligation to comply with the cut-offs established by the court's three scheduling orders and Defendants' failure to give any indication that they concurred in Plaintiffs' assessment of Defendants' asserted liability. Regrettably, this was not done either by Plaintiffs' counsel or Plaintiffs themselves who bear the ultimate responsibility to supervise the progress of their case. *Cine Forty–Second Street The-*

*atre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 n. 10 (2d Cir.1979) ("the acts and omissions of counsel are normally wholly attributable to the client.") (citing *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).

As the record also amply demonstrates, Plaintiffs were not diligent in commencing discovery, including expert discovery, as required by the Second Amended Scheduling Order. Indeed, Plaintiffs' counsel concedes he did not carefully read the complete text of the order which, if he had, assuredly would have prompted an aggressive initiation of discovery and compliance notwithstanding the advent of important family matters. Accordingly, Plaintiffs' motion (Doc. No. 23) for an order extending the period for Plaintiffs' expert disclosures under the Second Amended Scheduling Order and for limited discovery to oppose summary judgment is DENIED.

### 3. *Defendants' Motion to Preclude.*

█ Defendants request, pursuant to Fed. R.Civ.P. 37(b)(2)(B) and/or 37(c)(1), that Plaintiffs be excluded from offering into evidence the opinion of a testifying expert as a sanction for Plaintiffs' failure to comply with the Second Amended Scheduling Order's requirement that Plaintiffs disclose in accordance with Fed.R.Civ.P. 26. Herrscher Affidavit, Exhibit L.

The Federal Rules of Civil Procedure provide that failures to comply with case management orders entered by the court pursuant to Rule 16(b) are subject to the sanctions available to courts to enforce its orders including the authority to make such orders "as are just," as well as those available under Rule 37(b)(2)(B), (C) and (D). Fed.R.Civ.P. 16(f); *Neufeld v. Neufeld*, 172 F.R.D. 115, 118 (S.D.N.Y.1997) (Fed.R.Civ.P.16(f) permits district court to use any sanction available under Fed.R.Civ.P. 37 for discovery violations, including dismissal of the action, where litigant fails to comply with scheduling order). Specifically, Defendants request as a sanction for Plaintiffs' failure to timely comply with established deadlines for expert disclosure, pursuant to Fed.R.Civ.P. 26(a)(2)(A-C), by the Second Amended Scheduling Or-

der, that Plaintiffs be precluded from offering at trial the testimony of any expert required to have been disclosed by September 15, 2003 as directed in the Second Amended Scheduling Order. Herrscher Affidavit ¶ ¶ 22–23.

In opposition, Plaintiffs argue that as counsel's failure to comply with the September 15th disclosure date as ordered was an "inadvertent mistake," it should not result in a " 'death penalty' " for Plaintiffs' "meritorious" claims in the form of the preclusion sanction sought by Defendant. Clack Affidavit ¶ 28. In reply, Defendants assert that Plaintiffs never had any basis to hold a good faith belief that Defendants' liability was "clear," and that Defendants would not oppose a further enlargement of the scheduled cut-offs for discovery and expert disclosures as established in the Second Amended Scheduling Order. Herrscher Reply Affidavit ¶ 13. Defendants maintain they will suffer prejudice if the requested preclusion sanction is not granted as Defendants diligently pursued fact discovery and the retention of a testifying expert who inspected the accused ladder and timely served the expert's report, at the time of the instant motion, in accordance with the deadline provided in the Second Amended Scheduling Order. *Id.* ¶ 12.

"Federal Rule 37(c)(1) provides that a party who, without substantial justification, fails to disclose information required by Rule 26 shall not be permitted to use as evidence at trial the information not disclosed." *McNerney v. Archer Daniels Midland Company*, 164 F.R.D. 584, 587 (W.D.N.Y.1995). Rule 26(a)(2)(C), as relevant, requires the expert disclosures mandated by Rule 26(a)(2)(A) be "made at the time and in the sequence directed by the court." Preclusion of a proposed expert's testimony and report, disclosed in violation of a scheduling order, entered pursuant to Rule 16(b), is a proper sanction where the tardy expert report is offered in opposition to summary judgment. *Trilogy Communications, Inc. v. Times Fiber Communications, Inc.*, 109 F.3d 739, 744–45 (Fed.Cir. 1997) (exclusion justified where party fails to provide adequate explanation for failure to

timely provide expert disclosure in accordance with scheduling order). *Compare Lory, supra,* at 89 (observing that although district court was authorized under Fed. R.Civ.P. 16(f) to preclude plaintiff's expert witness report as sanction for failing, without good cause, to timely disclose such report, as the untimely disclosure was plaintiff's single instance of noncompliance, such harsh sanction was not warranted). Courts have nevertheless held that where a party fails, without satisfactory explanation, to comply with a prior scheduling order and amended scheduling orders extending the period for expert disclosure, preclusion is properly ordered. *Exxon Corporation v. Halcon Shipping Co., Ltd.,* 156 F.R.D. 589, 591–92 (D.N.J.1994) (affirming magistrate judge). *See also Trost v. Trek Bicycle Corporation,* 162 F.3d 1004, 1008–09 (8th Cir. 1998) (affirming grant of summary judgment and preclusion of plaintiff's expert testimony to defendant based, in part, on plaintiff's late—60 days—disclosure of expert report under Rule 16(b) scheduling order and noting plaintiff's failure to timely request extension of scheduling order's disclosure deadline and prejudice to defendant which had relied on plaintiff's failure to timely disclose in preparation of motion for summary judgment based on absence of evidence that product was negligently manufactured and was therefore dangerous for its intended use).

■ The court recognizes that preclusion of expert testimony particularly in a products liability case is a "drastic remedy" and should be applied only where the "party's conduct represents flagrant bad faith and callous disregard for the federal rules." *McNerney, supra,* at 587 (internal citation omitted). Further, although the imposition of a remedy as strong as precluding a plaintiff's expert testimony "can lead to extinction of [the plaintiff's] claim" based on plaintiff's counsel's disregard of his professional responsibilities, "[a] litigant chooses counsel at

his peril." *Cine Forty–Second Street Theatre Corp., supra,* at 1068 (citing *Link, supra* ). Indeed, "[t]he acts and omissions of counsel are normally wholly attributable to the client." *Cine Forty–Second St. Theatre Corp., supra,* at 1068 n. 10 (citing *Link, supra* ). *See also Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 667 (2d Cir.1980) ("absent a truly extraordinary situation, the client is not excused from the consequences of his attorney's nonfeasance.") (internal citations omitted).

■ In deciding whether to preclude an expert's trial testimony for a party's failure to make timely expert witness disclosures pursuant to a case management order as a sanction under Rule 37(c)(1), courts consider several factors including (1) the reason for the failure to timely disclose, (2) the importance of the testimony, (3) potential prejudice in allowing the testimony, and (4) the availability of a continuance to cure such prejudice. *Potomac Electric Power Co. v. Electric Motor Supply, Inc.,* 190 F.R.D. 372, 377–78 (D.Md.1999) (citing cases).[5] Here, conceding for the sake of analysis, that Plaintiffs' report testimony intended to be offered in opposition to summary judgment is important to Plaintiffs' case, and that no trial date has been established, nevertheless, Plaintiffs cannot satisfy the other elements to be considered.

First, Plaintiffs' explanation for failing to meet the established deadline is wholly without justification. Plaintiff sought and was granted a generous one year period for discovery and expert disclosure under the original Scheduling Order, and two additional generous extensions of the Scheduling Order, including the Amended Scheduling Order and the Second Amended Scheduling Order. Yet counsel, based solely on counsel's undue preoccupation with his evaluation of the merits as entirely lying in Plaintiffs' favor, failed to conduct *any* discovery until he noticed, apparently inadvertently, that the expert dis-

5. The court acknowledges that in a products liability case expert testimony is typically of significance to a plaintiff's ability to sustain his burden of proof; however, if this factor was accorded predominant weight in determining a motion to preclude, no such motions would ever be granted. It is precisely the fact that the threat of preclusion of vital testimony carries this impact that gives the preclusion sanction meaningful value in compelling counsels' compliance with a court's pretrial orders.

closure deadline established under the Second Amended Scheduling Order had passed. Counsel's unwillingness to proceed with discovery based on his inflexible view that such discovery would be unnecessary was unwarranted, and amounted to wilful refusal to comply with any of the court's three scheduling orders. Moreover, counsel's admitted failure to read the explicit warning unambiguously stated by the court in the Second Amended Scheduling Order, that no further amendments would be granted, satisfies the standard that preclusion is justified when a party's conduct demonstrates bad faith and flagrant disregard for the Federal Rules of Civil Procedure and the integrity of the court's orders. "Adherence to reasonable court deadlines is critical to restoring integrity in court proceedings." *Geiserman v. MacDonald*, 893 F.2d 787, 790–91 (5th Cir. 1990). Moreover, as Defendants state, they relied properly on Plaintiffs' failure to provide timely disclosure in framing their attack on Plaintiffs' case. To allow, Plaintiffs yet another "bite at the apple," would prejudice Defendants given the significant investment made in pursuing their defense of the action in accordance with the reasonable deadlines of the court established *at the parties' behest.* Permitting Plaintiffs to avoid preclusion under the circumstances presented would render the court's scheduling orders in this case of hollow import and severely undermine the court's duty to manage its docket by commanding compliance with orders issued pursuant to Rule 16(b). Defendants' motion to preclude is accordingly GRANTED.[6]

### 4. *Summary Judgment*

Defendants seek summary judgment dismissing the action on the basis that the preclusion of Plaintiffs' expert witness report leaves no unresolved material issues of fact requiring trial. Plaintiffs' opposition to summary judgment is limited to a request for discovery pursuant to Fed.R.Civ.P. 56(f).

Summary judgment will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex, supra,* at 322, 106 S.Ct. 2548. Nevertheless, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson, supra,* at 247–48, 106 S.Ct. 2505. Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995).

In the instant case, Plaintiffs' first four claims against Defendants are product liability claims pertaining to the ladder's collapse which caused the injuries for which Plaintiffs sue.[7] Product liability actions in New York may be predicated on one or more of four theories of liabilities, including breach of express contract, breach of implied contract, negligence, or strict products liability. *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204, 207 (1983) (citing *Victorson v. Bock Laundry*

---

6. An order precluding evidence as a sanction under Rule 37 is non-dispositive. *Burns v. Imagine Films Entertainment, Inc.*, 198 F.R.D. 593, 599–601 (W.D.N.Y.2000).

7. Plaintiffs' Fifth Cause of Action is Mrs. Arnold's loss of consortium claim which is derivative of the First, Second, Third and Fourth Causes of Action. *Liff v. Schildkrout*, 49 N.Y.2d 622, 427 N.Y.S.2d 746, 404 N.E.2d 1288, 1291 (1980).

*Machine Co.*, 37 N.Y.2d 395, 373 N.Y.S.2d 39, 335 N.E.2d 275, 276–77 (1975)).[8] Here, Plaintiffs' First Cause of Action sounds in negligence in that "[t]he defendants knew, or in the exercise of reasonable care, should have known," that the ladder was defectively manufactured and designed. Plaintiffs' Second Cause of Action seeks to hold Defendants strictly liable for Arnold's injuries. Plaintiffs' Third and Fourth Causes of Action are claims for breach of implied and express contract as the claims allege, respectively, that Defendants breached implied and express warranties of merchantability.[9] *See Denny v. Ford Motor Company*, 87 N.Y.2d 248, 639 N.Y.S.2d 250, 662 N.E.2d 730, 736 (1995) (observing that breach of warranty claims "originate[ ] in contract law").

As stated, Plaintiffs' First Cause of Action alleges negligence based on defective manufacture and design of the ladder. "Negligence, broadly speaking, is conduct that falls below the standard of what a reasonably prudent person would do under similar circumstances judged at the time of the conduct at issue." *Fane v. Zimmer*, 927 F.2d 124, 130 (2d Cir.1991) (citing *Cohen v. Josam Construction Corp.*, 17 A.D.2d 253, 234 N.Y.S.2d 147 (App. Div. 1st Dep't 1962)). To establish a *prima facie* products liability claim for negligence, "the plaintiff must establish that a manufacturer failed to exercise reasonable care in making his product."

*Fane, supra*, at 130 (citing *Lancaster Silo & Block Co. v. Northern Propane Gas Co.*, 75 A.D.2d 55, 427 N.Y.S.2d 1009, 1013 (App. Div. 4th Dep't 1980)). Further, the manufacturer's breach of its duty to exercise reasonable care must be the proximate cause of the plaintiff's injuries. *Fane, supra*, at 130. Accordingly, to meet their burden of proof on their negligence claim, Plaintiffs must present some evidence as to relevant industry practices or alternative designs produced to establish a basis for determining how a reasonably prudent person, acting under similar circumstances, would have manufactured and designed the ladder. *Fane, supra*, at 130 n. 3.

In the instant case, the record is devoid of any evidence from Plaintiffs regarding industry standards in manufacturing and designing ladders similar to the one at issue. Significantly, Plaintiffs have failed to establish that this information was not solely in the hands of Defendants and, as such, that the court has denied Plaintiffs' request for Rule 56(f) discovery, Discussion, *supra*, at 66–67, has no bearing on Plaintiffs' ability to adequately prepare its argument so as to avoid summary judgment. Accordingly, Plaintiffs have failed to meet their burden on the First Cause of Action asserting negligence, and summary judgment on the claim should be GRANTED in favor of Defendants.

**8.** As this is a diversity case, in the absence of any suggestion by either party to the contrary, the court applies New York substantive law. *Klaxon Co. v. Stentor Manufacturing Co., Inc.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

**9.** Defendants maintain that Plaintiffs essentially assert only a claim for strict products liability based on a manufacturing defect with regard to the ladder and, as such, address only that theory of liability in arguing for summary judgment. Defendants' Memorandum at 6–8. The record, however, does not support a finding that Plaintiffs have abandoned their other theories of liability. In support of the assertion that this case involves only an alleged manufacturing defect, Defendants refer to an unspecified "letter to this court." Defendants' Memorandum at 6. A review of the record demonstrates that the only letter from Plaintiffs to this court in which such an assertion is made is the Clack December 26th Letter. Appendix A at 2. Such assertion is, however, contrary to Plaintiffs' responses to Defen-

dants' interrogatories, prepared on December 20, 2002 and received by Defendants on December 26, 2002, in which Plaintiffs maintain that the manner in which Plaintiffs allege that the ladder was defective "will be determined during the course of pre-trial discovery and the trial of the action," and reassert that Plaintiffs' claims include negligence, strict products liability based on defective manufacturing and design, and breach of express and implied contract. *See* Plaintiffs' Answers to Defendants' Interrogatories, copy attached as Exh. H to Herrscher Affidavit. Plaintiffs reassert these claims in Plaintiffs' Local Rule 56.1 Statement of Material Facts, attached to Plaintiffs' motion seeking an enlargement of time within which to complete discovery under Fed.R.Civ.P. 56(f) (Doc. No. 23). Accordingly, the court considers whether summary judgment may be granted not only as to Plaintiffs' claim for strict products liability based on a manufacturing defect, but also for strict products liability based on a design defect, negligence, and breach of express and implied warranties.

As to Plaintiffs' Second Cause of Action alleging strict products liability based on defective manufacturing and design, the court observes that strict products liability actions may be predicated on the assertion that the product is defective because of a manufacturing defect, a design defect or the failure to provide adequate warnings regarding the product's use. *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204, 207 (1983). "[T]he scienter that is so vital to [a] negligence suit need not be shown [in a strict products liability action]." *Caprara v. Chrysler Corporation*, 52 N.Y.2d 114, 436 N.Y.S.2d 251, 417 N.E.2d 545, 549 (1981). Nor will the fact that a manufacturer acted with due care exonerate it from liability in a strict products liability action. *Id.* at 550. Rather,

> strict products liability requires proof that (1) the product is 'defective' because it is not reasonably safe as marketed; (2) the product was used for a normal purpose; (3) the defect was a substantial factor in causing the plaintiff's injuries; (4) the plaintiff by the exercise of reasonable care would not have both discovered the defect and apprehended its danger; (5) the plaintiff would not have otherwise avoided the injury by the exercise of ordinary care.

*Fane v. Zimmer, Inc.*, 927 F.2d 124, 128 (2d Cir.1991) (quoting *Wolfgruber v. Upjohn Co.*, 72 A.D.2d 59, 423 N.Y.S.2d 95, 97 (App. Div. 4th Dep't 1979), *aff'd*, 52 N.Y.2d 768, 436 N.Y.S.2d 614, 417 N.E.2d 1002 (1980)).

"[D]istributors of defective products, as well as retailers and manufacturers, are subject to strict products liability." *Nichols v. Agway, Inc.*, 280 A.D.2d 889, 720 N.Y.S.2d 691, 692 (App. Div. 4th Dep't 2001).

"In strict products liability cases involving manufacturing defects, the harm arises from the product's failure to perform in the intended manner due to some flaw in the fabrication process," and "the flaw alone is a sufficient basis to hold the manufacturer liable without regard to fault." *Denny v. Ford Motor Company*, 87 N.Y.2d 248, 639 N.Y.S.2d 250, 662 N.E.2d 730, 735 n. 3 (1995). "When a design defect is asserted, the focus is on whether the product, as designed, was not reasonably safe or presented an unreasonable risk of harm to the user." *Fane, supra*, at 128 (citing *Voss, supra*, at 207–08).

To establish a *prima facie* case of strict products liability based on a manufacturing defect, "plaintiff may rely upon the circumstances of the accident and proof that the product did not perform as intended." *Brown v. Borruso*, 238 A.D.2d 884, 660 N.Y.S.2d 780, 781 (App. Div. 4th Dep't 1997) (citing cases). Here, Plaintiffs' allegations that Arnold was using the ladder "in the manner intended and for the purposes expected by the defendants and in a manner reasonably foreseeable to them [Defendants]," when the ladder collapsed and caused Arnold to sustain injuries, Complaint ¶¶ 9–11, sufficiently establish a *prima facie* case that the ladder was defectively manufactured and designed by Krause. *See Brown, supra*, at 781.

Once a plaintiff establishes a *prima facie* case for strict products liability based on a manufacturing defect, a defendant moving for summary judgment "must submit proof in admissible form establishing that plaintiff's injuries were not caused by a manufacturing defect in the product." *Brown, supra*, at 781 (citing cases). In the instant case, Defendants met that burden by submitting the affidavit of their expert witness, Dr. Burdette, who, upon examining the subject ladder and recreating the conditions under which Arnold's accident occurred, opined that Plaintiffs' claim that the ladder was defectively manufactured is without evidentiary support. Burdette Affidavit ¶¶ 4–7. The burden then shifted to Plaintiffs who, in order to survive summary judgment, were required to demonstrate the existence of a triable issue of fact as to whether the ladder was defective when it left the manufacture. *Brown, supra; Van Deusen v. Norton Company*, 204 A.D.2d 867, 612 N.Y.S.2d 464, 466 (App. Div.3d Dep't 1994). Plaintiffs, however, cannot solely rely on the fact of the accident, but must submit some direct evidence establishing the existence of a manufacturing defect when the ladder left the manufacturer. *Id.* Here, as the court has precluded Plaintiffs' expert witness report, and denied Plaintiffs' request for Rule 56(f)

discovery, Plaintiffs have not submitted any evidence, including direct evidence, establishing the existence of either a manufacturing defect. Accordingly, Plaintiffs have failed to meet their burden to avoid summary judgment as to this aspect of their Second Cause of Action alleging strict products liability based on a manufacturing defect and summary judgment should be GRANTED in favor of Defendants.

■ A claim for strict products liability based on a design defect differs from a cause of action for a negligently designed product in that the plaintiff is not required to establish that the manufacturer acted unreasonably in designing the product, thus shifting the focus from the manufacturer's conduct to whether the product, as designed, was not reasonably safe. *Voss, supra,* at 207. The manufacturer will be held strictly liable regardless of the lack of actual knowledge of the product's unsafe condition because the manufacturer is in a superior position to discover any design defect and to alter the design before making the product available to the public. *Id.* at 207–08.

■ "[T]o establish a *prima facie* case in a strict products liability action for design defects, the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury." *Id.* at 208. Further, it is the plaintiff's burden to present "evidence that the product, as designed, presented a substantial likelihood of harm and feasibly could have been designed more safely." *Id.* Nevertheless, the plaintiff may initially rely on circumstantial evidence, including the occurrence of an accident, that the product did not function as intended, to prove a design defect. *Dubecky v. S2 Yachts, Inc.,* 234 A.D.2d 501, 651 N.Y.S.2d 602, 603 (App. Div.2d Dep't 1996). Accordingly, in the instant case, Plaintiffs may rely on the ladder's collapse as establishing that the ladder failed to function as intended based on a design defect.

■ The burden of proof then shifts to the defendant to present "any evidence that the accident was not necessarily attributable to a defect." *Dubecky, supra,* at 603. In the instant case, Dr. Burdette's expert opinion, based on his examination of the subject ladder, that Arnold's accident was caused by misuse of the ladder in a manner inconsistent with the ladder's instructions, Burdette Affidavit ¶¶ 4–5, meets Defendants' burden and shifts the burden to Plaintiffs who must present direct evidence of a design defect to avoid summary judgment. *Dubecky, supra,* at 603. As Plaintiffs have been precluded from presenting any evidence from their expert witness as to the cause of the accident, Plaintiffs cannot meet this burden. Accordingly, summary judgment should be GRANTED in favor of Defendants as to this aspect of Defendants' motion.

Nor is there any merit to Plaintiffs' Third Cause of Action alleging breach of implied warranty of merchantability. Because claims for breach of implied warranty are based on contract, the theory of liability was originally only available to the injured consumer who was able to establish privity as the purchaser of the alleged defective product from the seller. *Denny v. Ford Motor Company,* 87 N.Y.2d 248, 639 N.Y.S.2d 250, 662 N.E.2d 730, 733–34 (1995). The rigid privity requirement led some courts, including the New York Court of Appeals, to recognize "certain narrow exceptions to the privity requirement in an effort to avoid the doctrine's harsher effects." *Denny, supra,* at 734 (citing cases). Courts eventually shifted their focus from the breach of implied warranty theory of liability to the more flexible strict products liability theory. *Id.* Here, as Arnold is the purchaser of the alleged defective ladder, the requisite privity of contract exists to support Plaintiffs' products liability claim based on breach of implied warranty.

Nevertheless, the New York Court of Appeals has recognized that the establishment of the strict products liability remedy based on defective design has significantly diminished the need for implied warranty theory as there is "a high degree of overlap between the substantive aspects of the two causes of action." *Denny, supra,* at 734. In particular, "[a]s a practical matter, the distinction between the defect concepts in tort law and

in implied warranty theory may have little or no effect in most cases." *Id.* at 738. Actions for strict products liability based on defective design, however, have not completely subsumed actions for breach of implied warranty. *Id.* Rather, the existence in New York's version of the Uniform Commercial Code (McKinney 1993)[10] ("UCC") of provisions for breach of implied warrant, *i.e.,* UCC 2–314[2][c] and 2–318, demonstrates the continued vitality of such theory of liability.

Claims for strict products liability based on design defect have a "negligence-like risk/benefit component" requiring the weighing of a product's dangers against its overall advantages to determine whether the product is "not reasonably safe." *Denny, supra,* at 736. In contrast, "the UCC's concept of a 'defective' product requires an inquiry only into whether the product in question was 'fit for the ordinary purposes for which such goods are used,'" and such inquiry "focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners." *Id.* at 736 (quoting UCC 2–314[2][c] ).

> This distinction between the 'defect' analysis in breach of implied warranty actions and the 'defect' analysis in strict products liability actions is explained by the differing etiology and doctrinal underpinnings of the two distinct theories. The former class of actions originates in contract law, which directs its attention to the purchaser's disappointed expectations; the latter originates in tort law, which traditionally has concerned itself with social policy and risk allocation by means other than those dictated by the marketplace.

*Denny, supra,* at 736.

In *Denny, supra,* the New York Court of Appeals upheld the jury's verdict in a products liability action for injuries sustained in a rollover accident involving the defendant manufacturer's sports utility vehicle, finding the defendant liable for breach of implied warranty of merchantability, but not liable under strict products liability. *Id.* at 739. Crucial to the determination is that the "ordi-

nary purpose" for which the product was marketed and sold to the plaintiff, *i.e.,* routine highway and suburban street driving, was not the same as the utility of the vehicle's characteristics enabling the vehicle to drive over highly irregular terrain typifying off-road travel, against which the increased risk of rollover accidents when the vehicle was driven on paved roads was to be weighed. *Id.* at 738–39. Accordingly, under the circumstances of the case, a rational fact finder could have simultaneously concluded that the vehicle's utility as an off-road vehicle outweighed the risk of injury resulting from rollover accidents and that the vehicle was not safe for the "ordinary purpose" of daily driving for which it was marketed and sold, supporting the legal conclusion that plaintiffs' strict products liability cause of action based on defective design was not viable, but that defendant should nevertheless be held liable for breach of implied warranty of merchantability, *i.e.,* that the vehicle was not "merchantable" or "fit" for its "ordinary purpose." *Id.*

In the instant case, Plaintiffs have not alleged sufficient facts distinguishing their Third Cause of Action for breach of implied warrant of merchantability from their Second Cause of Action alleging strict products liability based on defective design. Rather, Plaintiffs' Second Cause of Action alleges that the "ladder was defective, unsafe, inadequate and unsuitable when it was sold and/or distributed by the defendants, and as a result thereof, the ladder was unreasonably dangerous when used in its intended and expected manners and in reasonably foreseeable manners." Complaint ¶ 19. Plaintiffs' Third Cause of Action alleges that prior to Arnold's purchase of the ladder, "the defendants impliedly warranted to said plaintiff [Arnold] that said ladder was of merchantable quality, fit, suitable and safe for the uses and purposes for which it was intended and expected and for reasonably foreseeable uses," Complaint ¶ 23, that Arnold "relied upon the implied warranties of the defendants in using said ladder," Complaint

---

**10.** Unless otherwise specified, references to New York Uniform Commercial Code are to McKin- ney 1993.

¶ 24, that the ladder "was not of merchantable quality, nor was it fit, suitable or safe for the uses and purposes for which it was intended, nor for reasonably foreseeable uses." Complaint ¶ 25. Thus, the gravamen of both Plaintiffs' theories of liability are essentially the same.

Nor have Plaintiffs submitted anything in opposition to summary judgment establishing separate factual bases for their breach of implied warranty of merchantability claims and the strict products liability claim based on defective design. Plaintiffs' failure to distinguish between how the ladder allegedly "was unreasonably dangerous when used in its intended and expected manners and in reasonably foreseeable manners," as asserted in support of the Second Cause of Action, from how the ladder allegedly "was not of merchantable quality, nor was it fit, suitable or safe for the uses and purposes for which it was intended, nor for reasonably foreseeable uses," as asserted in support of the Third Cause of Action, establishes that the distinction between the defect concepts in tort law and in implied warranty theory is of no effect in the instant case. *Denny, supra,* at 738. Accordingly, as Plaintiffs have failed to establish that their Third Cause of Action for breach of implied warranty differs from their claim Second Cause of Action for strict products liability based on defective design, for which the court has recommended granting summary judgment in favor of Defendants, likewise, summary judgment on Plaintiffs' Third Cause of Action should also be GRANTED in favor of Defendants.

▬▬▬ Finally, as to Plaintiffs' Fourth Cause of Action alleging breach of express warranty, "[p]roof of a defect in the product is not an element of a cause of action for breach of express warranty. Instead, plaintiff must prove that the product did not perform as the manufacturer promised it would." *Sanders v. Quikstak, Inc.,* 889 F.Supp. 128, 133 n. 7 (S.D.N.Y.1995) (citing 1 Michael Weinberger, New York Products Liability § 16.02 (1982)). To establish a *prima facie* case for breach of express warranty, Plaintiffs were required to present some evidence that the defendant made a specific statement of fact or promise which induced Plaintiffs to purchase the ladder or that Plaintiffs relied upon any such affirmation of fact or promise. *Davis v. New York City Hous. Auth.,* 246 A.D.2d 575, 668 N.Y.S.2d 391, 393 (App. Div.2d Dep't 1998); *Schimmenti v. Ply Gem Indus.,* 156 A.D.2d 658, 549 N.Y.S.2d 152, 154 (App. Div.2d Dep't 1989). Here, Plaintiffs have failed to present any evidence of any specific statement of fact or promise which either induced Plaintiffs to purchase the ladder or on which Plaintiffs relied in purchasing the ladder. Accordingly, Plaintiffs have not established a *prima facie* products liability claim based on breach of express warranty and Defendants should be GRANTED summary judgment on Plaintiffs'.Fourth Cause of Action.

Alternatively, should, in the event of an appeal pursuant to Fed.R.Civ.P. 72(a), the District Judge find that the undersigned's order precluding Plaintiffs' expert witness report was clearly erroneous or contrary to law and, accordingly, accept Plaintiffs' expert witness report proffered in opposition to summary judgment,[11] then disputed issues of fact based on Plaintiffs' expert's report preclude granting Defendants' motion for summary judgment. Resolution of these two expert witness opinions involves a decision of material fact which must be left for the jury.

## 5. *Plaintiffs' Request for a Default Judgment*

Plaintiffs have moved for an order pursuant to Fed.R.Civ.P. 37(b) and (d), granting a judgment by default in favor of Plaintiffs and against Defendants based on Defendants' failure to provide discovery in response to Plaintiffs' requests, including failing to appear for scheduled depositions. Alternatively, Plaintiffs seeks an order pursuant to Fed.R.Civ.P. 37(a), (b) and (d) compelling Defendants to comply with Plaintiffs' discovery requests, including attending depositions. Defendants have not responded to this motion.

The Second Circuit has held

The discovery provisions of the Federal Rules of Civil Procedure are designed to

---

11. Discussion, *supra,* at 64 n. 4.

achieve disclosure of all the evidence related to the merits of a controversy. It is intended that this disclosure or evidence proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention. When a party seeks to frustrate this design by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate.

*Daval Steel Products v. M/V Fakredine,* 951 F.2d 1357, 1365 (2d Cir.1991) (internal citations omitted).

Accordingly, the district court may impose sanctions when "a party ... fails to obey an order to provide or permit discovery." Fed. R.Civ.P. 37(b).

 Imposition of discovery sanctions is within the broad discretion of the court. *Bobal v. Rensselaer Polytechnic Institute,* 916 F.2d 759, 764 (2d Cir.1990), *cert. denied,* 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991); *Penthouse International, Ltd. v. Playboy Enterprises, Inc.,* 663 F.2d 371, 386–87 (2d Cir.1981). Although drastic sanctions such as striking the answer or entering a default judgment are available, they ordinarily are not imposed unless disobedience has been wilful, in bad faith, or otherwise culpable. *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) (sanctions under Rule 37 justified where responding party has control over documents requested and fails or refuses production without showing of inability to comply with court's order); *Daval Steel Products, supra,* at 1367 (order prohibiting corporations from presenting evidence on a liability issue was justified as the corporation repeatedly failed to respond to a court order requiring document and witness production for deposition).

 "The most severe sanction available to the Court is default and dismissal." *Capellupo v. FMC Corp.,* 126 F.R.D. 545, 552 (D.Minn.1989). The severe sanction of dismissal of a lawsuit should be imposed only under extreme circumstances, *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779

(2nd Cir.1999); *Jones v. Niagara Frontier Transp. Auth.,* 836 F.2d 731, 734 (2d Cir. 1987); *John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.,* 845 F.2d 1172, 1176 (2d Cir.1988), because it runs counter to the public policy of deciding cases on the merits. *Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494, 504 (4th Cir.1977). The Supreme Court has, nevertheless, recognized that it is within the district court's discretion to impose such a sanction. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Dismissal is appropriate in "the flagrant case in which it is demonstrated that the failure to produce materially affects the substantial rights of the adverse party and is prejudicial to the presentation of his case." *Wilson, supra,* at 504 (internal quotations omitted).

As the extreme sanction of dismissal of a case without reaching the merits of the controversy raises constitutional due process considerations, dismissal is appropriate not "as punishment for general misbehavior," but as a deterrent to others from engaging in conduct representing "flagrant bad faith" and "callous disregard" of the litigant's obligations under the Federal Rules of Civil Procedure. *Wilson, supra,* at 504. *See also, Jackson v. Nissan Motor Corp. in U.S.A.,* 121 F.R.D. 311, 318 n. 71 (M.D.Tenn.1988)(if the failure to comply creates a presumption of bad faith or untruthfulness, no due process violation occurs by imposing sanctions as such failure to produce is tantamount to admitting the case is without merit). As stated, the sanction of dismissal should not be imposed under Rule 37 unless the failure to comply with a pretrial production order results from willfulness, bad faith, or any fault of the sanctioned party. *West, supra,* at 779.

Further, courts have generally held that the most severe sanction of dismissal should not be imposed absent justification such as some element of culpability. *Burke v. ITT Automotive, Inc.,* 139 F.R.D. 24, 32 (W.D.N.Y.1991). In *Societe Internationale, supra,* the Supreme Court held that Rule 37 should not be construed to authorize dismissal of [a] complaint because of petitioner's noncompliance with a pretrial production order when it has been established

that failure to comply has been due to inability, and not to wilfulness, bad faith, or any fault of petitioner.

*Societe Internationale, supra,* at 212, 78 S.Ct. 1087.

The Court found that the dismissal of the plaintiff's complaint violated due process as the plaintiff's failure to comply with discovery requests was not attributable to either its own conduct or to circumstances within its control and thus was not the plaintiff's "fault." *Id.* at 211–12, 78 S.Ct. 1087. The Second Circuit has held that the "fault" criterion announced in *Societe Internationale,* includes a party's gross negligence in failing to obey an order compelling discovery. *See Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066–68 (2d Cir.1979).

■ A trial court is to consider seven factors in determining whether to impose sanctions under Rule 37, including:

1) the history of the failure to comply with court orders; 2) whether the party violating the order was given ample time to respond; 3) the effectiveness of alternative sanctions; 4) whether the noncomplying party was warned of and given an opportunity to argue against the impending sanction; 5) the prejudice to the adversary caused by the failure to comply; 6) whether the documents at issue would normally be readily obtainable; and 7) the extent of the party's personal responsibility.

*Burke, supra,* at 33.

■ In the instant case, although Plaintiffs did timely serve their discovery requests under the Second Amended Scheduling Order, and although Defendants do not argue that the requested discovery was not readily obtainable, application of the remaining factors to the record does not support the sanction of dismissal.

First, Defendants' only failure to comply with Plaintiffs' discovery requests and orders occurred after Defendants moved for an order to preclude Plaintiffs from presenting expert testimony, based on Plaintiffs' failure to timely disclose their expert witness, and for summary judgment. "[A] single pretrial violation," such as a party's failure to comply

with discovery demands would ordinarily not warrant a sanction as harsh as dismissal, although a pattern of repeated discovery violations will, given that "[g]eneral deterrence, rather than mere remediation of the particular parties' conduct, is a goal under Rule 37." *United States Freight Co. v. Penn Central Transportation Co.,* 716 F.2d 954, 955 (2d Cir.1983). Second, Defendants were never warned by the court that their failure to comply with Plaintiffs' discovery requests could result in sanctions against them. Given that the court is recommending granting summary judgment in favor of Defendants because Plaintiffs' failure to timely disclose their expert witness has resulted in the preclusion of any expert testimony in Plaintiffs' favor, leaving Plaintiffs with nothing to counter Defendants' expert testimony, Plaintiffs have not been prejudiced by Defendants' failure to comply with Plaintiffs' discovery requests. Nor is there any evidence in the record that Defendants, rather than their attorneys, are personally responsible for failing to provide responses to Plaintiffs' discovery requests. Further, effective alternative sanctions, including ordering Defendants to comply with Plaintiffs' discovery requests, are available, although the court will not issue such an order because the grant of summary judgment in Defendants' favor would render such order moot.

Although the court does not condone Defendants' failure to respond to Plaintiffs' discovery requests pending resolution of Defendants' motions to preclude and for summary judgment, the record in this case demonstrates that, as discussed in connection with Defendants' motion to preclude Plaintiffs' expert testimony, Plaintiffs have repeatedly failed to comply with this court's scheduling orders, as well as to make any effort to move this case along. In sum, the orderly progress of this case languished for months after entry of the Second Amended Scheduling Order primarily as a result of Plaintiffs' unexcused failure to proceed with discovery, including disclosing Plaintiffs' expert witness. Plaintiffs' belated attempt to avoid summary judgment by sanctioning Defendants for what the court finds is an excusable, although not condoned, failure to respond to

discovery, is without merit. Accordingly, Plaintiffs' motion for an order of default against Defendants should be DENIED and, alternatively, for an order compelling Defendants to comply with discovery is DISMISSED as moot.

## CONCLUSION

Based on the foregoing, Defendants' motion (Doc. No. 18) is GRANTED insofar as Defendants seek, pursuant to Fed.R.Civ.P. 37(b)(2)(B) and (c)(1), to preclude Plaintiffs' expert testimony and, should be GRANTED, insofar as Defendants seek summary judgment; Plaintiffs' motion filed December 2, 2003 (Doc. No. 23) seeking an enlargement of the time within which to designate testifying experts and to file reports and to extend the period for discovery is DENIED, and Plaintiffs' motion filed January 5, 2004 (Doc. No. 26) for entry of default judgment against Defendants should be DENIED and, alternatively, for an order compelling Defendants to comply with discovery is DISMISSED as moot.

SO ORDERED, as to Defendants' motion seeking to preclude Plaintiffs' expert testimony and as to Plaintiffs' motions seeking an enlargement of time within which to designate testifying experts, to file reports, to extend the period for discovery, and, alternatively, Plaintiffs' motion to compel discovery.

## APPENDIX A

Amigone, Sanchez,
Mattrey & Marshall, LLP
Attorneys and Counsellors at Law
1300 Main Place Tower
Buffalo, New York 14202
(716) 852-1300

December 26, 2002

Magistrate Judge Leslie G. Foschio
United State District Court
501 U.S. Courthouse
68 Court Street
Buffalo, New York 14202

**RE: Arnold v. Krause, et al**

**Civil Action No. 00–CV–05008 (F)**

Dear Magistrate Foschio:

As you know, Judge Arcara referred this case to you for pre-trial procedures and the entry of a scheduling order, and you entered a scheduling order on December 6, 2001, which, among other things, provides that all fact discovery be concluded by December 31, 2002. A copy of your scheduling order is enclosed for your reference.

Unfortunately, the parties have not been able to complete their fact discovery to date, and I discussed this subject with Defendants' counsel, Mary Jo Herrscher, Esq., who now represents all three defendants, and Mrs. Herrscher and I agreed that I would send you a letter on behalf of both of us, requesting that the deadline for completing fact discovery be extended to June 30, 2003 and that the parties' obligations to identify expert witnesses be extended to an appropriate date within that deadline.

For your information, the defendants served an extensive set of interrogatories and other demands in mid-August, and I recently completed and served a 35 page set of answers to the defendants' interrogatories, plus responses to their other demands, providing fully detailed information concerning all aspects of the plaintiffs' claims. I expect that the defendants will now proceed to inspect the ladder in question, and after the inspection, will depose the plaintiffs. At that point, the parties may well be in a position to meaningfully discuss the possibility of settlement. As I have previously indicated, I believe that this is a clear-cut case of a manufacturing defect and that the only real question in the case will be damages. If settlement cannot be achieved, I will proceed with further discovery and depositions of the defendants.

In view of the foregoing, I hereby request that the deadline for completing fact discovery be extended to June 30, 2003 and that the parties' obligations to identify expert witnesses be extended to an appropriate date within that deadline. I look forward to hearing from you, and I give you my best wishes for a healthy and happy New Year.

Very truly yours,

RICHARD A. CLACK

## APPENDIX B

Amigone, Sanchez,
Mattrey & Marshall, LLP
Attorneys and Counsellors at Law
1300 Main Place Tower
Buffalo, New York 14202
(716) 852-1300

June 26, 2003

Magistrate Judge Leslie G. Foschio
United State District Court
501 U.S. Courthouse
68 Court Street
Buffalo, New York 14202

 **RE: Arnold v. Krause, *et al***

 **Civil Action No. 00–CV–0500A(F)**

Dear Magistrate Foschio:

As you know, Judge Arcara referred this case to you for pre-trial procedures and the entry of a scheduling order, and you entered a Scheduling Order on December 6, 2001, providing, among other things, that all fact discovery be concluded by December 31, 2002, and, at the joint request of counsel for the parties, you issued an Amended Scheduling Order on January 3, 2003, extending the deadline for fact discovery to June 30, 2003. Copies of these orders are enclosed for your reference.

This spring, the parties completed fact discovery of the plaintiff. The plaintiff has answered an exhaustive set of interrogatories and responded to other various discovery demands, all of his medical and income records have been turned over, his deposition was taken, and the defendants' expert inspected and photographed the ladder in question at the accident site.

As you may recall, it is my position that this is a case of clear-cut liability, and I was hopeful that, after the conclusion of the defendants' discovery of the plaintiff, that meaningful settlement discussions could be held. In the meantime, I held off conducting discovery of the defendants and retaining an expert. Therefore, after the ladder inspection, I inquired as to whether the defendants were interested in discussing settlement, and I was advised today that they are not interested at this time. Therefore, I have to proceed with discovery of the defendants, which will consist of serving a set of interrogatories and other discovery demands, followed by depositions of appropriate representatives of the defendants.

In view of the foregoing, I hereby request that the deadline for completing fact discovery be extended to December 31, 2003 and that the parties' obligations to identify expert witnesses be extended to appropriate dates within that deadline. I have conferred with Defendants' counsel, Mary Jo Herrscher, Esq., and she concurs with, and joins in, this request.

Thank your for your consideration in this matter.

Very truly yours,

RICHARD A. CLACK