■ ROBERT S. VAN DEUSEN, Respondent-Appellant, v NORTON COMPANY et al., Appellants, and GARTHCO CORPORATION, Respondent, et al., Defendant. (And Two Third-Party Actions.) [612 NYS2d 464] —Peters, J. Appeals (1) from a judgment and an amended judgment of the Supreme Court (Spain, J.), entered October 2, 1992 and November 12, 1992 in Rensselaer County, *inter alia,* upon a verdict rendered in favor of plaintiff, and (2) from an order of said court, entered November 4, 1992 in Rensselaer County, which, *inter alia,* denied certain defendants' motions to set aside the verdict.

Plaintiff, an employee of third-party defendant R.V. L. Contracting, Inc. (hereinafter RVL), sustained a serious injury to his right arm when, while working as a flagger on a construction site, he was hit by a metal object. At the time of the accident, third-party defendant Richard V. LaVoy, the owner of RVL, was operating a pavement cutting saw which was equipped with a diamond-tipped saw blade. The blade was manufactured in 1981 by defendants Norton Company and Norton Construction Products, a Division of Norton Company (hereinafter collectively referred to as Norton), and is used on a variety of pavement cutting machines, including the one here which was manufactured by defendant Federal-Mogul Corporation. After the incident the blade, which normally has 31 segments, only had five segments remaining. Defendant Garthco Corporation, the contractor, had rented the pavement cutting saw from defendant R.B. Wing (hereinafter Wing), a commercial seller and retailer of industrial equipment. Garthco had subcontracted the pavement cutting work to RVL and LaVoy picked up the machine directly from Wing for use on the project.

Plaintiff commenced actions[1] against Norton, Federal-Mogul, Wing and Garthco, setting forth causes of actions sounding in, *inter alia,* negligence, strict products liability alleging improper or defective product design and manufacture, and failure to warn. Prior to submission of the case to the jury, Supreme Court dismissed plaintiff's claim against Garthco based on its alleged violation of Labor Law § 241 (6).

The jury returned a verdict against Norton, Federal-Mogul and Wing in the amount of $780,873. Of that verdict, $600,000 was awarded for future pain and suffering. The jury found, *inter alia,* that Norton and Federal-Mogul were negligent and that their negligence was the proximate cause of plaintiff's injury. In doing so, it found that the blade had a manufacturing defect at the time Norton placed it into the stream of commerce and that said defect was a proximate cause of plaintiff's injury. After the entry of a judgment and amended judgment reflecting this verdict, Norton and Federal-Mogul each moved to, *inter alia,* set aside the verdict as against the weight of the evidence. Such motions were denied by Supreme Court and Norton now appeals,[2] while plaintiff appeals from that part of the amended judgment which dismissed its Labor Law cause of action against Garthco.

Addressing Norton's first contention that the verdict should be set aside because plaintiff failed to prove, by direct or circumstantial evidence, that Norton defectively manufactured the blade, we note that to prove the existence of a manufacturing defect, it must be shown that the blade was not built to specifications or that the blade did not conform to the manufacturer's intended design *(see, Lombard v Centrico, Inc.,* 161 AD2d 1071, 1072). Further, to prove a manufacturing defect by direct evidence, a prima facie case cannot be established without proof that the defect existed when the product left the manufacturer *(see, Rosado v Proctor & Schwartz,* 66 NY2d 21, 25).

Norton contends that reliance on the testimony of Vito Colangelo, a metallurgical engineer, to support the jury finding of a manufacturing defect is misplaced because Colangelo did not offer any testimony to establish that the blade had a manufacturing defect or that such defect existed at the time it

1. Plaintiff initially commenced one action against Norton and another action against Wing, Federal-Mogul and Garthco. These two actions were subsequently consolidated.

2. Although Federal-Mogul originally sought to appeal the judgment, amended judgment and order denying the motion to set aside the verdict, Federal-Mogul has not perfected its appeal.

left the manufacturer's hands. While it is undisputed that Colangelo did not examine the blade until 1992, Colangelo clearly testified that he believed that the blade was defectively manufactured due to the presence of excess braze material. Colangelo explained that brazing is the process of bonding the segments of the blade to the core and that his examination of the blade revealed a clearance or a gap which was three times larger than it should have been. Such a finding was significant to Colangelo because the larger the clearance, the weaker the joints. As the diamond segments of the blade wear down, Colangelo explained that the heat transfer to the brazed material becomes greater. As the heat flows to the joint with an enlarged clearance, it becomes weaker.

Although we find that Colangelo testified as to the manner in which a blade would be manufactured and that this brazing process occurs during such time, it was the testimony of Richard Dutcher, a technical director for Norton, that confirmed the process described by Colangelo and that such process was used by Norton at the time of manufacture. Moreover, although Dutcher detailed the safety and testing procedures performed on each such blade prior to distribution, he noted that visual inspections are conducted to determine whether there is a defect in the brazed joint which may result in the clearance identified by Colangelo. Although testimony by Donald Erich, a metallurgical engineer testifying on behalf of Norton, was that the methods used for brazing were changed in 1981 so that the clearance and extra brazing identified by Colangelo could not have occurred at the time of manufacture, we find Erich's testimony regarding the change in this process unpersuasive. Moreover, although Erich explained that overheating would cause the segments to move resulting in the clearance identified by Colangelo, the jury verdict evinces a rejection of such explanation. We note that "[t]he test is not whether the jury erred in weighing the evidence presented, but whether any viable evidence exists to support the verdict" (*Lachanski v Craig*, 141 AD2d 995, 996; *see, Fieldy v Weimer*, 169 AD2d 961, 962). Accordingly, we conclude that the jury's determination of the theory that the blade at issue had a manufacturing defect at the time that Norton placed it into the stream of commerce is not against the weight of the evidence.

Addressing next the jury's finding that the manufacturing defect in the blade was a proximate cause of plaintiff's injury, we reject Norton's contention that the testimony of Colangelo should be deemed inadmissible on the ground that he was not

qualified to identify the segment of the blade found in plaintiff's arm from a human X ray. We find that there was not only a showing of a strong foundation supporting Colangelo's expertise, but also that Colangelo did not just rely upon the X ray to identify the object in plaintiff's arm as a segment of the blade. The record clearly shows that Colangelo relied upon his expertise in metals as well as the pathology report to arrive at his conclusion. With such testimony confirmed by Dutcher, we find that the jury's conclusion that the defect in the blade was a proximate cause of plaintiff's injuries is supported by the record.

Addressing next the jury's finding of negligence against Norton, we find that there was sufficient support in the credible evidence presented which precludes us from setting aside the verdict on this issue as well (see, Halvorsen v Ford Motor Co., 132 AD2d 57, 60, lv denied 71 NY2d 805). In finding that there was a manufacturing defect and that the blade was defective when placed into the market in 1981, we find that there was sufficient evidence to find that Norton failed to use reasonable care in inspecting or testing such blade for defects. Although Erich testified as to the tests used prior to putting the blade into the stream of commerce, such testimony also revealed that such tests were conducted at room temperature and not under temperatures encountered when the blade was in use. Moreover, Erich testified that when the temperature increases, the strength of the material drops abruptly. Finally, there was ample evidence introduced to support the fact that Norton failed to use any field tests before placing this product into the stream of commerce. Accordingly, the jury's determination will not be set aside as against the weight of the evidence.[3]

The last issue raised by Norton is whether the jury's award of damages in the amount of $600,000 for future pain and suffering was excessive. We first note the great weight to be accorded to Supreme Court, which saw and heard the witnesses and did not find this verdict to be excessive (see, Moffatt

---

3. Norton contends, and we agree, that Supreme Court erred in allowing the introduction of evidence concerning prior accidents involving a blade manufactured by Norton because plaintiff failed to show that the relevant conditions of plaintiff's accident and the previous accidents were substantially the same (see, Facci v General Elec. Co., 192 AD2d 991, 993; see also, Hyde v County of Rensselaer, 51 NY2d 927, 929). Yet, we find such error to be inconsequential given that sufficient evidence exists to support the jury's finding of negligence in the failure to use reasonable care in testing without a finding of prior knowledge before placing it into the stream of commerce.

*v Arlen Realty Mgt.,* 109 AD2d 934, 935). The evidence showed that plaintiff has permanent injuries in his dominant arm, wrist and hand which is evidenced by atrophy, scarring, a loss of function, strength, diminished sensation and restriction of motion. Testimony further established plaintiff's remaining life span of over 40 years. Hence, based upon the permanency of these injuries, the physical deformity and resultant loss of function which may not be alleviated by any subsequent surgeries or procedures, we hereby affirm the jury verdict as to damages as we find such amount not to "deviate[ ] materially from what would be reasonable compensation" (CPLR 5501 [c]). As to any other claims made by Norton, we find them to be without merit.

As to plaintiff's contention that it is entitled to a new trial against Garthco on its claim alleging a violation of Labor Law § 241 (6), we note that on or about July 1, 1992, prior to submission of the case to the jury, the Court of Appeals specifically held that injuries sustained on highway construction projects fall within the purview of Labor Law § 241 (6) *(Mosher v State of New York,* 80 NY2d 286; *Ares v State of New York,* 80 NY2d 959). Hence, we find that the jury should be allowed to consider the allegations that Garthco, the general contractor on the project, had violated its nondelegable duty under this statute to provide proper guarding on the machine. Contrary to Garthco's contention, we find that plaintiff's complaint, as supplemented by its bill of particulars, adequately set forth a cause of action against Garthco alleging such violation.

Cardona, P. J., White, Casey and Weiss, JJ., concur. Ordered that the judgment and amended judgment are modified, on the law, without costs, by reversing so much thereof as dismissed the cause of action alleging a violation of Labor Law § 241 (6) against defendant Garthco Corporation; matter remitted to the Supreme Court for a new trial on said cause of action; and, as so modified, affirmed. Ordered that the order is affirmed, without costs.