■ SHAWN McARDLE et al., Respondents, v NAVISTAR INTERNATIONAL CORPORATION, Defendant, and MURPHY BROOM, INC., a Division of SCHWARZE INDUSTRIES, INC., et al., Appellants. (And a Third-Party Action.) [742 NYS2d 146] —Cardona, P.J. Appeal from an order of the Supreme Court (Bradley, J.), entered November 14, 2000 in Ulster County, which, inter alia, denied a motion by defendants Murphy Broom, Inc. and Schwarze Industries, Inc. for summary judgment dismissing the complaint against them.

Plaintiff Shawn McArdle (hereinafter plaintiff) was employed by the Department of Transportation (hereinafter DOT) and, as part of his duties, operated a Murphy Broom M-4000 street sweeper which was purchased from defendant Navistar International Corporation in 1993. The sweeper consisted of, inter alia, a truck chassis and engine manufactured by Navistar and modifications manufactured by defendant Murphy Broom, Inc., a division of defendant Schwarze Industries, Inc. The modifications included a broom sweeper with its metal housing, a water tank, and a fire hose filling system including a storage bracket for the hose. They also consisted of one step on each side of the rear of the chassis, with a hand hold above each step and one on the top edge of the vehicle. On April 29, 1996, plaintiff noticed that the sweeper's water tank was leaking, resulting in a 10-foot wide puddle of water under the sweeper. He walked through the water and climbed with wet boots to the top of the main broom housing located at the back of the sweeper. The surface was covered with "non-skid" tape that plaintiff described as "worn." Plaintiff opened the fill cap and inserted a garden hose to fill the water tank as previously demonstrated to him by a coworker. As he climbed down the

step and turned to dismount, he slipped, lost his footing and began to fall. Plaintiff lunged backwards, unsuccessfully attempting to grab the fire hose storage bracket for support. His wedding ring caught the bracket as he continued to fall. Plaintiff's ring finger was severed from his left hand and, unfortunately, could not be surgically reattached.

Plaintiff and his wife, derivatively, commenced this action against Navistar, Murphy Broom and Schwarze, asserting, inter alia, a cause of action in strict products liability alleging that defendants defectively designed and manufactured the street sweeper and failed to warn of potential hazards involved in its use. Plaintiffs also asserted a cause of action for negligent design and breach of the implied warranties of merchantability and fitness for a particular purpose. Following joinder of issue, plaintiffs discontinued their action against Navistar. Murphy Broom and Schwarze Industries (hereinafter collectively referred to as defendants) moved for summary judgment dismissing the complaint. Supreme Court denied the motion, resulting in this appeal.

Initially, defendants contend that Supreme Court erred in denying their motion seeking dismissal of plaintiffs' claims premised upon an alleged manufacturing defect. Significantly, "in strict products liability cases involving manufacturing defects, the harm arises from the product's failure to perform in the intended manner due to some flaw in the fabrication process" (*Denny v Ford Motor Co.*, 87 NY2d 248, 257 n 3). In order to succeed on such a claim, a plaintiff must establish that the product was not built to specifications or that the product, "as constructed, deviated from any such specifications or design" (*Searle v Suburban Propane Div. of Quantum Chem. Corp.*, 263 AD2d 335, 340; *see, Van Deusen v Norton Co.*, 204 AD2d 867). On a motion for summary judgment, a defendant seeking the dismissal of a strict products liability claim based on a manufacturing defect must submit admissible proof establishing, as a matter of law, that the product was not defective (*see, Rachlin v Volvo Cars of N. Am.*, 289 AD2d 981, 982). If the defendant presents such proof, the burden shifts to the plaintiff to demonstrate the existence of a triable issue as to whether, in fact, there was a defect (*see, id.*). Notably, in order to do so, a "plaintiff cannot rely solely upon the occurrence of the accident, but must submit some direct evidence that a defect existed" (*Brown v Borruso*, 238 AD2d 884, 885).

Here, defendants met their initial burden by submitting proof that the sweeper was built to state specifications and was thoroughly examined and approved by several DOT inspectors

prior to shipment. Plaintiffs' principal submission regarding a manufacturing defect relates to the possibility that the water tank was defective resulting in the leak which contributed to plaintiff's fall. Plaintiffs' expert engineer, Jeffrey Ketchman, opined that since the tank was only three years old, any leak must have resulted from a defect in either design or manufacture. That assertion was too speculative to defeat defendants' motion for summary judgment dismissing plaintiffs' claims premised on defective manufacture (*see, Ackert v V.A.W. of Am.*, 249 AD2d 804). In addition, plaintiffs' submissions concerning, inter alia, defects in the placement of the hand-holds and fire hose bracket more closely fit the definition of a design defect rather than a manufacturing defect (*see, Denny v Ford Motor Co.*, 87 NY2d 248, 257 n 3, *supra*). Therefore, such submissions are insufficient to support plaintiffs' manufacturing defect claims.

Next, defendants argue that plaintiffs waived their failure to warn claims by not expanding upon them in their responses to interrogatories. Notably, Ketchman opined that the sweeper's "Operator Safety Warnings and Instructions were defective for not cautioning operators to remove rings, wrist bands and other loose-fitting attire when working on or about the sweeper." He indicated that such warnings were particularly necessary because the nonskid tape on the sweeper was less effective when wet and the sharp, square corners on the fire hose safety bracket created snag points which rendered the bracket hazardous to grab onto when falling. Ketchman also detailed the absence of several other warnings in his affidavit and, given these assertions, we are unpersuaded that plaintiffs abandoned those claims.

Defendants further contend that, regardless of the waiver issue, plaintiffs' failure to warn claims should have been dismissed. We disagree. "A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known * * *" (*Liriano v Hobart Corp.*, 92 NY2d 232, 237 [citation omitted]). Defendants failed to establish that the hazards cited by plaintiffs were open and obvious, thus obviating the need for such warning. We are also unpersuaded by defendants' argument that, because the sweeper was equipped with a fire hose filling system that is operated from the ground, plaintiff's action in climbing to the top of the sweeper to fill the water tank was not reasonably foreseeable. We note that plaintiffs submitted a Murphy Broom M-4000 owner's manual, issued two years after manufacture of the subject sweeper but a year before plaintiff's

mishap, which specifically instructed that the water tank could be filled by way of the fill cap, as was done by plaintiff herein. Moreover, Jim Adair, vice president of Schwarze Industries, admitted the existence of other reasons to climb onto the back of the vehicle, such as to view the water level in the water tank, maintain the emergency lights and fill the fuel tank. Given the factual issues presented, Supreme Court properly denied defendants' motion for summary judgment insofar as it applied to plaintiffs' failure to warn claims.

Next, we are unpersuaded by defendants' contention that Supreme Court erred in failing to dismiss plaintiffs' strict products liability and negligence claims premised upon design defect. "A manufacturer has a duty to use reasonable care in designing a product for use in the manner for which it was intended as well as any unintended yet reasonably foreseeable use * * *" (*Bombara v Rogers Bros. Corp.*, 289 AD2d 356, 356-357 [citation omitted]). For a prima facie case in strict products liability for design defects to be established, "the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 107). A cause of action for negligent design additionally requires proof that the manufacturer acted unreasonably in designing the product (*see, id.* at 107).

Here, assuming, arguendo, that defendants produced sufficient proof to satisfy their initial burden on their motion seeking dismissal of the design defect claims, plaintiffs' submissions raise triable issues of fact as to whether the sweeper was reasonably safe for its intended use and whether defendants acted unreasonably in designing the sweeper (*see, id.*). Plaintiffs submitted Ketchman's report opining, inter alia, that nonskid tape was an improper choice to prevent slipping and that a metal grated plate should have been used, that the single side step and grab handle on the rear of the sweeper were inadequate for safety purposes, and that the fire hose hanging bracket should have been designed with rounded edges rather than sharp corners that created "snag" points. Given the information supplied by Ketchman, Supreme Court correctly held that plaintiffs' strict liability and negligence claims sounding in defective design survive summary judgment.

Finally, we have examined defendants' remaining arguments, including the assertion that the claims for breach of the implied warranties of merchantability (*see,* UCC 2-314) and fit-

ness for a particular purpose (see, UCC 2-315) should have been dismissed, and find them to be unsupported on this record.

Mercure, Crew III, Mugglin and Lahtinen, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied the motion by defendants Murphy Broom, Inc. and Schwarze Industries, Inc. for summary judgment dismissing causes of action premised upon manufacturing defects; motion granted to that extent, partial summary judgment awarded to said defendants and said causes of action dismissed against them; and, as so modified, affirmed.