KEVIN PRESTON et al., Appellants, v PETER LUGER ENTER-PRISES, INC., Respondent. [858 NYS2d 828]—

Peters, J.P. Appeal from that part of an order of the Supreme Court (Dawson, J.), entered February 28, 2007 in Essex County, which partially granted defendant's motion for summary judgment dismissing the complaint.

In April 2001, plaintiff Lucy Preston purchased a bottle of steak sauce manufactured by defendant at a grocery store in the Village of Lake Placid, Essex County. Upon attempting to open the glass bottle, plaintiff Kevin Preston (hereinafter plaintiff) was injured when the neck of the bottle broke. Plaintiff and his wife, derivatively, commenced this action sounding in strict products liability, breach of implied warranty, negligence and failure to warn. Following discovery, defendant moved for summary judgment dismissing the complaint and plaintiffs cross-moved for summary judgment on the breach of implied warranty claim. Supreme Court granted summary judgment in favor of defendant as to the strict products liability and negligence claims, and denied the remainder of defendant's motion as well as plaintiffs' cross motion. Plaintiffs now appeal from that part of the order which dismissed their causes of action for strict products liability and negligence.

Plaintiffs' strict products liability claim is premised upon both a design and manufacturing defect (*see Speller v Sears, Roebuck & Co.*, 100 NY2d 38, 41 [2003]). For a design defect to be actionable, "it must be established that the marketed product in question was designed in such a way that it is not reasonably safe and that the alleged design defect was a substantial factor in causing the [plaintiff's] injuries" (*Blandin v Marathon Equip. Co.*, 9 AD3d 574, 576 [2004]; *see Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 107 [1983]). Thus, "[l]iability attaches when the product, as designed, presents an unreasonable risk of harm to the user" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d at 107; *see Robinson v Reed-Prentice Div. of Package Mach. Co.*, 49 NY2d 471, 479 [1980]; *Jackson v Bomag GmbH*, 225 AD2d 879, 881 [1996], *lv denied* 88 NY2d 805 [1996]).

In support of its motion, defendant proffered the affidavits of Jody Storch, its president, and Dale Henderson, a manager in charge of quality assurance at Leone Industries, the bottle's manufacturer. Henderson averred that the thickness of the bottle well exceeded general industry standards and controverted the opinion of plaintiffs' expert that the long neck design of the bottle was defective. Moreover, according to both Henderson and Storch, of the approximately 2.1 million bottles of this design manufactured by Leone during the three-year period from 1999 to 2001, the time from which defendant began using the bottle design at issue until the date of the accident, this was the only instance they were aware of where the neck of the bottle broke upon an attempt to open it. Defendant's submissions in this respect were sufficient to meet its initial burden of a prima facie showing of entitlement to summary judgment on the design defect claim (*see Garrison v Clark Mun. Equip.*, 241 AD2d 872, 873 [1997]).

With plaintiffs now obligated to raise a triable issue of fact (*see Merritt v Raven Co.*, 271 AD2d 859, 861 [2000]; *Pigliavento v Tyler Equip. Corp.*, 248 AD2d 840, 841-842 [1998], *lv dismissed and denied* 92 NY2d 868 [1998]), we find that they failed to do so. Their proffered affidavit of Kevin Breen, an industrial engineer specializing in human factors and failure/performance analysis of various products, contains only generalized statements and bare conclusory assertions that the long neck bottle used has less "load carrying capability" than a short neck bottle and that the design violated acceptable engineering practices and industry standards. As Breen's opinion is not supported by any empirical data or foundational facts, it lacks sufficient probative value to raise an issue of fact that the subject bottle was not reasonably safe in its design (*see Pigliavento v*

*Tyler Equip. Corp.*, 248 AD2d at 842; *Fallon v Hannay & Son*, 153 AD2d 95, 101-102 [1989]; *see also D'Auguste v Shanty Hollow Corp.*, 26 AD3d 403, 404 [2006]; *Martinez v Roberts Consol. Indus.*, 299 AD2d 399, 399-400 [2002]).

Turning to plaintiffs' manufacturing defect claim, "in strict products liability cases involving manufacturing defects, the harm arises from the product's failure to perform in the intended manner due to some flaw in the fabrication process" (*Denny v Ford Motor Co.*, 87 NY2d 248, 257 n 3 [1995]; *see McArdle v Navistar Intl. Corp.*, 293 AD2d 931, 932 [2002]). For entitlement to summary judgment on this basis, a defendant must submit admissible proof establishing that the product was not defective as a matter of law (*see McArdle v Navistar Intl. Corp.*, 293 AD2d at 932; *see also Rachlin v Volvo Cars of N. Am.*, 289 AD2d 981, 982 [2001]).

Here, both Henderson and Storch detailed the bottle inspection process. Specifically, Henderson averred that "every single bottle" was inspected by various pieces of equipment, including undergoing "bright field analysis" which electronically inspects for flaws, and was then examined by a trained inspector and subjected to a variety of sampling procedures to ensure its quality and integrity. These methods, according to Henderson, tested and inspected for, among other things, sidewall thickness and impact resistance, deviations in the sealing surfaces, glass composition, cracks in the bottles and resistance to thermal expansion. Storch described how the cases of bottles were packaged when received from Leone, detailed defendant's bottling process and averred that each bottle is inspected by at least two employees and, if a visual defect were found on a bottle, it would be discarded. In our view, this evidence satisfied defendant's burden of establishing prima facie that the subject bottle was not defective when it left its manufacturing facility (*see McArdle v Navistar Intl. Corp.*, 293 AD2d at 932-933; *Tardella v RJR Nabisco*, 178 AD2d 737, 737-738 [1991]; *see also Ramos v Howard Indus., Inc.*, 10 NY3d 218, 223-224 [2008]).

As such, the burden shifted to plaintiffs "to demonstrate the existence of a triable issue as to whether, in fact, there was a defect" (*McArdle v Navistar Intl. Corp.*, 293 AD2d at 932). In order to do so, plaintiffs were required to either submit direct evidence that a defect existed when the product left the manufacturer (*see id.*; *Van Deusen v Norton Co.*, 204 AD2d 867, 869 [1994]) or, "in the absence of evidence identifying a specific flaw, . . . prove that the product did not perform as intended and exclude all other causes for the product's failure that are not attributable to defendant[ ]" (*Speller v Sears, Roebuck &*

*Co.*, 100 NY2d at 41; *see Halloran v Virginia Chems.*, 41 NY2d 386, 388 [1977]; *Maciarello v Empire Comfort Sys.*, 16 AD3d 1009, 1011 [2005]).

In opposition to defendant's motion, Breen opined that, upon observing photographs and examining portions of the bottle in question, he found "[s]mall discontinuities" in portions of the bottle's neck and cap section which reduce the load carrying capacity. However, Breen failed to explain the significance of these findings and did not cite to any industry standards or data to support a conclusion that such discontinuities in the glass bottle were irregular or otherwise affected the structural integrity of the bottle. More importantly, Breen equivocally concluded that there were *"potentially*[ ] manufacturing defects in this bottle that caused it to fail" (emphasis added), thus rendering his opinion as to a specific defect wholly speculative.

Further, plaintiffs' attempt to prove the case circumstantially in the absence of a specific defect was also insufficient to raise an issue of fact requiring a trial. Storch averred that, from 1999 to 2001, defendant did not sell its steak sauce directly to the grocery chain where plaintiffs purchased the subject bottle and that she was unaware of any of defendant's distributors selling to such grocery chain during this time period. Therefore, defendant maintained that, in light of the bottle's unknown chain of custody as well as the absence of a use-by date on the bottle, it could have been mishandled or damaged when it passed through the hands of a number of distributors prior to being sold to the grocery store where plaintiffs purchased it. Thus, in order to withstand summary dismissal, plaintiffs were required to come forward with evidence excluding preaccident damage to the bottle as the cause of its breakage (*see Speller v Sears, Roebuck & Co.*, 100 NY2d at 42). While Breen averred that there was no such damage to the bottle, he acknowledged that a portion of the neck of the bottle was not recovered following the accident, yet failed to discuss the size of the missing portion of the bottle or the likelihood that it contained evidence of damage that may have served as a fracture initiation site that weakened the bottle. Inasmuch as plaintiffs' proof was insufficient to exclude all other causes of breakage not attributable to defendant, summary judgment was properly granted to defendant (*see Maciarello v Empire Comfort Sys.*, 16 AD3d at 1011; *see also Blazynski v A. Gareleck & Sons, Inc.*, 48 AD3d 1168, 1169 [2008]).

Finally, in light of our findings, and inasmuch as there is almost no difference between a prima facie case in negligence and one in strict liability (*see Denny v Ford Motor Co.*, 87 NY2d

248, 257-258 [1995]; *Saunders v Farm Fans, div. of ffi Corp.*, 24 AD3d 1173, 1175 [2005]; *Blandin v Marathon Equip. Co.*, 9 AD3d at 576; *Di Marco v Westinghouse Elec. Corp.*, 170 AD2d 760, 762 [1991]; *see also Gebo v Black Clawson Co.*, 92 NY2d 387, 393-394 [1998]), we find that plaintiffs' proof similarly failed to raise an issue of fact as to their claims for negligent design and manufacturing.

Carpinello, Kane, Malone Jr. and Stein, JJ., concur. Ordered that the order is affirmed, with costs.