■ BETTY STALKER, Individually and as Administrator of the Estate of GEORGE R. STALKER, Deceased, Appellant, v GOODYEAR TIRE AND RUBBER COMPANY et al., Respondents. (And a Third-Party Action.) [874 NYS2d 632]—

Lahtinen, J. Appeal from an order of the Supreme Court (Donohue, J.), entered April 23, 2008 in Columbia County, which granted defendants' motions for summary judgment dismissing the complaint.

George R. Stalker (hereinafter decedent) died after a truck tire on which he was working exploded in what is known in the tire industry as a zipper rupture.[1] Decedent operated a truck repair business, as well as a trucking business, and he had over 20 years of experience working on commercial trucks, including

---

1. A zipper rupture is a break in the sidewall of a tire, from a few inches to several inches in length, between the beam and shoulder of the sidewall where the wires that provide structural support to the tire rupture after becoming fatigued due to the tire being used for a period of time while underinflated.

tire repair. In March 2001, a flat tire was discovered on the rear dual wheels of one of decedent's flatbed trailers. The tire was replaced and, later in the day, decedent attempted to repair the tire in his shop. As he was standing in front of the tire inflating it, a zipper rupture occurred. The explosion propelled decedent across the room and resulted in his death. The subject radial truck tire had been manufactured in 1993 by defendant Goodyear Tire and Rubber Company and retreaded in 1996 by defendant Rua & Sons, Inc.

Plaintiff, decedent's widow, commenced this products liability action against Goodyear. Goodyear brought a third-party action against, among another, Rua, which unsuccessfully moved for summary judgment dismissing the third-party complaint (35 AD3d 1050 [2006]). Plaintiff amended her complaint to include both Goodyear and Rua as defendants. Following disclosure, defendants made separate motions for summary judgment dismissing the action. Supreme Court granted the motions. Plaintiff appeals.

"A party injured as a result of a defective product may seek relief against the product manufacturer or others in the distribution chain if the defect was a substantial factor in causing the injury" (*Speller v Sears, Roebuck & Co.*, 100 NY2d 38, 41 [2003]). A strict products liability cause of action may be presented upon "a mistake in the manufacturing process," "an improper design" or a "fail[ure] to provide adequate warnings regarding the use of the product" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 106-107 [1983]). Plaintiff argues on appeal that she raised factual issues regarding design defect and failure to warn.

"A defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce" (*Scarangella v Thomas Built Buses*, 93 NY2d 655, 659 [1999] [internal quotations marks and citation omitted]; *see Preston v Peter Luger Enters., Inc.*, 51 AD3d 1322, 1323 [2008]). Defendants submitted ample proof to shift the burden to plaintiff via several experts who set forth that zipper ruptures occur as a result of low air pressure and poor maintenance rather than defective design and that, had decedent taken standard safety precautions, the accident would not have occurred. While Goodyear acknowledged obtaining a patent in 1994 for a process it hoped would address the zipper rupture problem, its expert explained that the patent was obtained dur-

ing the idea and study stage (before testing) and that the proposed process lacked merit to put into production. The various experts used by defendants established that zipper ruptures are a concern of the entire tire and retreading industry and they can be minimized by proper inflation, inspection and safety procedures. Industry-wide education efforts were undertaken in the early to mid-1990s including wall charts, warnings and safety standards. Safety procedures included, among other things, to remain outside the tire's trajectory through use of a clip-on air chuck. The experts explained that zipper ruptures happen in all brands of tires and no radial sidewall has been designed that prevents zipper ruptures in tires that have been used in an underinflated condition.

With defendants having satisfied their threshold burden on design defect, it became incumbent upon plaintiff to produce competent proof that the subject tire "as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d at 108; *see Cleary v Reliance Fuel Oil Assoc., Inc.*, 17 AD3d 503, 506 [2005], *affd* 5 NY3d 859 [2005]; *Putnick v H.M.C. Assoc.*, 137 AD2d 179, 184 [1988]). The primary expert evidence submitted by plaintiff on the issue of design defect was an affidavit from Dennis Carlson, an engineer.[2] Carlson contends that the tire was defectively designed, but he does so with generalized statements and in conclusory terms unsupported by analysis or data. While Carlson claims that the proposed design in the 1994 Goodyear patent "cures the problem at the heart of this case," he provides no elaboration or explanation. A factual issue regarding design defect is not established by merely pointing to efforts within the industry to make a safer product, without providing some detail as to how the current product is not reasonably safe and how a feasible alternative would be safer. Plaintiff's proof was insufficient to raise a triable issue regarding design defect (*see generally Preston v Peter Luger Enters., Inc.*, 51 AD3d at 1325).

Next, we consider plaintiff's inadequate warnings claim. "A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product[s] of which it knew or should have known" (*Liriano v Hobart Corp.*, 92 NY2d 232, 237 [1998]; *see Rastelli v Goodyear Tire & Rubber Co.*, 79 NY2d 289, 297 [1992]). However, "[w]here the person who would benefit from a warning is already aware of the specific hazard, the

---

2. A report by engineer H.R. Baumgardner (who retired during the litigation) is unsworn, the affidavit of Kenneth Laughery deals with the issue of warnings, and the affidavit of James Pugh addresses cause of death.

manufacturer cannot be held liable for failing to warn of that known hazard" (*Steuhl v Home Therapy Equip., Inc.*, 51 AD3d 1101, 1103 [2008]; *see Hurlburt v S.W.B. Constr. Co.*, 20 AD3d 854, 855 [2005]; *Schiller v National Presto Indus.*, 225 AD2d 1053, 1054 [1996]; *cf. Brady v Dunlop Tire Corp.*, 275 AD2d 503, 504 [2000]). Decedent had over 20 years of experience working on commercial truck tires. His son (who started working for his father as a teenager), as well as others who worked at the business, recalled receiving safety directions from decedent. Specifically, decedent warned that tires that had been run underinflated could potentially rupture when inflated because the cords in the sidewall have a greater risk of failing, and he directed that, when reinflating a tire, to stand to the side of it and use a clip-on air chuck. A poster on the wall in decedent's shop warned workers, when reinflating a tire, to always use a clip-on air chuck and never to stand in the tire's trajectory area. While decedent did not apparently use the precise words "zipper rupture" and "trajectory" when discussing tire safety, the evidence in the record established that he was aware of the specific risk and fully knowledgeable of the proper safety procedures. We conclude that Supreme Court properly granted defendants' motions and dismissed the action.

Cardona, P.J., Peters, Rose and Kane, JJ., concur. Ordered that the order is affirmed, with one bill of costs.