◼ THOMAS FISHER, Appellant, v MULTIQUIP, INC., Respondent, et al., Defendant. (And a Third-Party Action.) [949 NYS2d 214]—

Stein, J. Appeals (1) from an order of the Supreme Court (Demarest, J.), entered November 12, 2010 in Franklin County, which, among other things, granted a motion by defendant Multiquip, Inc. for summary judgment dismissing the complaint and all cross claims against it, and (2) from an order of said court, entered May 20, 2011 in Franklin County, which denied plaintiff's motion for renewal/reargument.

In September 2003, plaintiff was severely injured while attempting to clear concrete out of a cylinder inside a concrete pump owned by plaintiff and manufactured by defendant Multiquip, Inc. (hereinafter defendant). At the time that plaintiff was injured, he and his supervisor, Richard Haas, were preparing to use the pump in the course of their employment with third-party defendant, Costs of Wisconsin, Inc. However, the pump would not operate properly and plaintiff discovered that one of its cylinders appeared to be blocked by some hard-

ened concrete left there the previous time that the pump was used.[1] Plaintiff testified at his deposition that, prior to attempting to clear the blockage, he turned the engine key to the off position, observed that the pressure gauge read zero and then placed his right hand into one of the cylinders. According to Haas, as he walked around the pump, he noticed that the instrument panel was illuminated and turned the key to the off position, which caused the pump to cycle, shifting the swing arm, and crushing plaintiff's hand, which ultimately required surgical amputation.

Plaintiff thereafter commenced this action against defendant and others,[2] seeking damages for his injuries based, as pertinent here, on negligence and strict products liability claims, both of which are premised on defective design and inadequate safety warnings. In its answer, defendant asserted, among other things, various affirmative defenses and, after discovery was completed, moved for summary judgment dismissing the complaint and all cross claims against it. Supreme Court granted defendant's motion, finding that plaintiff's failure to adhere to the warnings provided with the pump was the sole cause of the accident. Plaintiff subsequently moved for leave to renew and/or reargue and Supreme Court denied that motion. Plaintiff now appeals from each order.

In order to recover in a strict products liability action, the plaintiff must prove that "the defendant manufactured for sale, or sold, distributed, leased, or otherwise marketed" a product, that "the product was defective," that the plaintiff was injured and that "the defect was a substantial factor in causing the injury" (Kreindler, Rodriguez, Beekman and Cook, New York Law of Torts § 16:18 [15 West's NY Prac Series 2011]). "Under strict liability law, 'a product may be defective by reason of a manufacturing flaw, improper design or failure to warn' "

---

**1.** The pump's functioning involves two cylinders located in the hopper, which operate in alternating cycles of taking in and pushing out concrete, with the use of hydraulic pressure. The same hydraulic pressure operates a swing arm, which forces the exiting concrete through a hose towards where the concrete is to be applied. The pump itself is controlled by a key operated switch which has three positions: start, on, and off. To start the pump, the key must be turned to the start position. Once the pump is started, the key rests in the on position. Simply turning the key from the off position to the on position will not cause the pump to start, but will illuminate the lights on the pump's instrument panel. According to the deposition testimony of defendant's product manager, although turning the key to the off position ceases operation of the hydraulic engine, hydraulic pressure remains for approximately 15 seconds and the swing arm cycles a final time.

**2.** The action was discontinued against one defendant and the other defendant is not involved in this appeal.

(*Steuhl v Home Therapy Equip., Inc.*, 51 AD3d 1101, 1102 [2008], quoting *Sukljian v Ross & Son Co.*, 69 NY2d 89, 94 [1986]). Here, plaintiff premises both his negligence and his strict liability claims on improper design and failure to warn, only. "[I]nasmuch as there is almost no difference between a prima facie case in negligence and one in strict liability" (*Preston v Peter Luger Enters., Inc.*, 51 AD3d 1322, 1325 [2008]), we will address the negligence and strict liability claims together. Because our review of the record reveals the existence of triable issues of fact with regard to plaintiff's claims based upon defective design, we reverse in part.

Turning first to defendant's alleged failure to provide adequate warnings, it is well settled that "manufacturers have a duty to warn against latent dangers due to intended uses and foreseeable unintended uses of their products" (*Steuhl v Home Therapy Equip., Inc.*, 51 AD3d at 1103). Liability for failure to warn may be imposed "based upon either the complete failure to warn of a particular hazard or the inclusion of warnings that are insufficient" (*DiMura v City of Albany*, 239 AD2d 828, 829 [1997]). "Although the adequacy of a warning generally is a question of fact, in a proper case the court can decide as a matter of law that there is no duty to warn or that the duty has been discharged as a matter of law" (*Schiller v National Presto Indus.*, 225 AD2d 1053, 1054 [1996] [internal quotation marks and citations omitted]; *see generally Theoharis v Pengate Handling Sys. of N.Y.*, 300 AD2d 884, 884-885 [2002]).

Here, defendant established that it provided a number of safety instructions and warnings of the danger encountered by plaintiff, both on the pump itself and in the operation manual. For example, it is uncontroverted that the manual contains several prominent warnings about the danger of amputation if a person places his or her hand in the concrete cylinders or any part of his or her body in the hopper when the engine is running or when there is accumulated hydraulic pressure. In particular, the service instruction section of the manual contains an explicit warning that "[y]ou are at extreme risk if the engine is running *or if pressure is in the hydraulic system*" (emphasis added). The safety instructions further indicate that, before any maintenance or repairs are performed, the engine should be turned off, the starter key should be removed, a "[d]o not operate" tag should be placed over the switch and the battery cables should be disconnected. The employee handbook of plaintiff's employer contains similar safety instructions. Defendant also submitted the affidavits of two experts, both of whom averred that plaintiff's accident was caused by a series of errors and a

general failure to follow such warnings and instructions. Thus, defendant met its initial burden of establishing a prima facie entitlement to dismissal of plaintiff's failure to warn claims, shifting the burden to plaintiff to demonstrate a triable issue of fact (see *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

Although plaintiff admittedly read and was familiar with the applicable warnings and instructions and failed to follow them, he points to several warnings and instructions that he contends were contradictory and confusing.[3] Additionally, he asserts that defendant should have specifically warned about the latent hazard—of which he was unaware—presented by the accumulation of hydraulic pressure that remains when the machine is turned off.

Notably, the purportedly contradictory warnings are in two different sections of the manual—one in the operating instruction section and one in the service instruction section—and are clearly applicable to two different situations. Moreover, as previously noted, the service portion of the manual explicitly warns of the risk of pressure remaining in the hydraulic system even if the engine is not running. In our view, this warning—combined with the other cautionary instructions provided by defendant with respect to attempting to service the concrete pump—was sufficient to meet defendant's duty to warn as a matter of law. Accordingly, plaintiff has failed to raise a question of fact regarding defendant's duty to warn sufficient to defeat defendant's motion for summary judgment.

We reach a different conclusion with respect to plaintiff's design defect claims. It is well established that "a 'defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use' " (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 107 [1983], quoting *Robinson v Reed-Prentice Div. of Package Mach. Co.*, 49 NY2d 471, 479 [1980]). In order to recover on this basis, " 'it must be established that the marketed product in question was designed in such a way that it is not reasonably safe and that the alleged design defect was a substantial factor in causing the [plaintiff's] injuries' " (*Preston v Peter Luger Enters., Inc.*, 51 AD3d at 1323, quoting *Blandin v Marathon*

---

**3.** For example, one part of the manual states, "WARNING: NEVER PLACE YOUR HANDS OR ANY PART OF YOUR BODY IN THE HOPPER OR ALLOW ANYONE ELSE TO DO SO." In contrast, another section of the manual states, "You will be required to put your hand in the concrete cylinders," which are located in the hopper.

*Equip. Co.*, 9 AD3d 574, 576 [2004]). The determination of a design defect requires a risk/utility analysis that involves consideration of whether, if the alleged defect was known at the time of manufacture, " 'a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner' " (*Denny v Ford Motor Co.*, 87 NY2d 248, 257 [1995], quoting *Voss v Black & Decker Mfg. Co.*, 59 NY2d at 108). Although such analysis generally presents a question of fact for trial, "[s]ummary judgment in a strict products liability case may be granted [to a defendant] on the basis of [a] plaintiff's conduct when the plaintiff's actions constituted 'the sole proximate cause' of his or her injuries" (*Yun Tung Chow v Reckitt & Colman, Inc.*, 17 NY3d 29, 34 [2011], quoting *Amatulli v Delhi Constr. Corp.*, 77 NY2d 525, 534 [1991]). However, where "a factfinder could conclude on the basis of the record before [it] that the product was so inherently dangerous that [the product] should never have found its way into the stream of commerce as packaged and marketed" (*Yun Tung Chow v Reckitt & Colman, Inc.*, 17 NY3d at 34), a plaintiff's conduct will not be considered the sole proximate cause of his or her injuries and a defendant's motion for summary judgment should be denied.

Here, defendant's experts opined that the pump met appropriate industry standards and was reasonably safe as designed and manufactured and that there were "no malfunctions, failures, or defects in the [pump] that were the cause of the subject accident." This was sufficient to shift the burden to plaintiff to present "competent proof that the [pump's design] 'was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner' " (*Stalker v Goodyear Tire & Rubber Co.*, 60 AD3d 1173, 1175 [2009], quoting *Voss v Black & Decker Mfg. Co.*, 59 NY2d at 108). To that end, plaintiff provided the affidavits of two experts setting forth their opinions that the design of the pump—which undisputedly allowed for the storage of hydraulic pressure in the pump after it was turned off, thereby enabling the pump to cycle a final time—was not reasonably safe and was the cause of plaintiff's accident. Plaintiff's experts also presented various alternative designs, which they claimed would have prevented the storage of pressure after the pump was turned off and were economically and technologically feasible.

The conflicting opinions of the parties' experts regarding the reasonableness of the pump's design present classic credibility issues, which are ordinarily a matter for the trier of fact to resolve (*see Steuhl v Home Therapy Equip., Inc.*, 51 AD3d at

1104; *Abar v Freightliner Corp.*, 208 AD2d 999, 1001 [1994]). Thus, even if, as defendant asserts, plaintiff's failure to heed the warnings and instructions caused the accident and/or the accident resulted from Haas' conduct,[4] so long as " 'defendant's negligence and unsafe design can be shown to be a substantial cause of the events which produced the injury,' the existence of another proximate cause of the accident in addition to defendant's defective design does not excuse defendant from liability" (*Blandin v Marathon Equip. Co.*, 9 AD3d at 576 n, quoting *Bush v Lamb-Grays Harbor Co.*, 246 AD2d 768, 771 [1998]). Thus, viewing the evidence in a light most favorable to plaintiff, Supreme Court should not have granted summary judgment to defendant on plaintiff's defective design claim.[5]

The parties' remaining contentions have been considered and are either academic or without merit.

Mercure, J.P., Lahtinen, Spain and McCarthy, JJ., concur. Ordered that the order entered November 12, 2010 is modified, on the law, without costs, by reversing so much thereof as granted the motion of defendant Multiquip, Inc. for summary judgment dismissing plaintiff's design defect claim; motion denied to said extent; and, as so modified, affirmed. Ordered that the appeal from the order entered May 20, 2011 is dismissed, as academic, without costs.

---

4. We also note the existence of multiple factual issues regarding the exact manner in which the pump was activated at the time of plaintiff's accident, including, among others, the position of the switch and whether he checked the pressure gauge before attempting his repair.

5. Defendant also moved to strike plaintiff's second amended response to its first set of interrogatories, which motion was rendered moot by Supreme Court. Given our partial reversal of summary judgment to defendant, this motion is no longer moot.