Darrow v Hetronic Deutschland GMBH (2020 NY Slip Op 01543)





Darrow v Hetronic Deutschland GMBH


2020 NY Slip Op 01543


Decided on March 5, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 5, 2020

528675

[*1]Cynthia Darrow, Individually and as Administrator of the Estate of Robert W. Darrow, Deceased, Appellant,
v
Hetronic Deutschland GMBH et al., Respondents.

Calendar Date: January 15, 2020

Before: Lynch, J.P., Clark, Devine, Pritzker and Colangelo, JJ.


Martin, Harding & Mazzotti, LLP, Albany (Craig A. Cushing of counsel), for appellant.
Wilson Elser Moskowitz Edelman & Dicker LLP, New York City (Nathan T. Horst of counsel), for Hetronic Deutschland GMBH and another, respondents.
Law Offices of Tromello & Fishman, Latham (Christine D'Addio Hanlon of counsel), for Hetronic USA, Inc., respondent.
Law Offices of John Wallace, Buffalo (Murray S. Brower of counsel), for D.C. Bates Equipment Co., Inc., respondent.
Thorn Gershon Tymann and Bonanni, LLP, Albany (Erin Mead of counsel), for Palfinger AG and others, respondents.



Pritzker, J.
Appeal from an order of the Supreme Court (Auffredou, J.), entered August 24, 2018 in Washington County, which, among other things, granted defendants' motions for summary judgment dismissing the second amended complaint.
In March 2008, Robert W. Darrow (hereinafter decedent) was injured when a remote control device used to operate a boom crane allegedly malfunctioned, pinning him down and crushing him. In June 2009, decedent and plaintiff, his wife, filed a complaint against, among others, defendants Hetronic Deutschlands GMBH, Hetronic Steuersysteme GMBH and Hetronic USA, Inc., asserting claims sounding in strict liability and breach of warranty, alleging that they designed, manufactured, advertised, marketed and sold a dangerous and defective remote control.[FN1] Plaintiff and decedent additionally brought actions against Palfinger AG, Palfinger USA, Inc. and Palfinger, Inc. (hereinafter collectively referred to as the Palfinger defendants) and defendant D.C. Bates Equipment Co., Inc. These three actions were consolidated pursuant to a stipulation of the parties. In essence, it is alleged that the remote control device was manufactured by Hetronic Deutschland GMBH or Hetronic Steuersysteme GMBH [FN2]
and then sold by its exclusive distributor, Hetronic USA, to the Palfinger defendants. The Palfinger defendants allegedly then sold the remote control to D.C. Bates, which then sold the device to decedent's employer.
After Supreme Court subsequently granted a motion by plaintiff to amend her complaint to add wrongful death and conscious pain and suffering causes of action, plaintiff filed an amended summons and complaint against all defendants raising such claims, followed soon thereafter by a second amended complaint. D.C. Bates interposed an answer with cross claims for indemnification against all three Hetronic defendants and the Palfinger defendants. Thereafter, Hetronic Deutschland GMBH and Hetronic Steuersysteme GMBH (hereinafter collectively referred to as Hetronic Deutschland) and Hetronic USA separately moved for summary judgment dismissing the second amended complaint and any cross claims against them. Subsequently, the Palfinger defendants replied in support of Hetronic Deutschland's and Hetronic USA's summary judgment motions dismissing the complaint and all cross claims. In the alternative, the Palfinger defendants asserted a cross claim for indemnification against Hetronic Deutschland and Hetronic USA and sought summary judgment on such cross claim. D.C. Bates replied and opposed the motions made by Hetronic USA and the Palfinger defendants in which they sought dismissal of D.C. Bates' cross claim for indemnification. D.C. Bates also requested that the court search the record and dismiss plaintiff's claims relating to breach of warranty against it and moved for summary judgment on its cross claim against the Palfinger defendants for indemnification. Days later, Hetronic USA, among other things, cross-claimed for conditional indemnification against Hetronic Deutschland. In August 2018, Supreme Court granted the motions by Hetronic Deutschland, Hetronic USA and the Palfinger defendants for summary judgment dismissing the second amended complaint, as well as all cross claims, against them. In addition, the court denied, as academic, Hetronic USA's motion for indemnification against Hetronic Deutschland and D.C. Bates' motion for summary judgment against the Palfinger defendants. Moreover, the court granted D.C. Bates' request for dismissal of plaintiff's breach of warranty claims against it. Finally, the court dismissed the Palfinger defendants' motion seeking a conditional order of indemnification against Hetronic Deutschland and Hetronic USA as academic. Plaintiff appeals.
"A party injured as a result of a defective product may seek relief against the product manufacturer or others in the distribution chain if the defect was a substantial factor in causing the injury" (Stalker v Goodyear Tire & Rubber Co., 60 AD3d 1173, 1174 [2009] [internal quotation marks and citation omitted]; see Hoover v New Holland N. Am., Inc., 23 NY3d 41, 53 [2014]). In general, "[a] strict products liability cause of action may be presented upon a mistake in the manufacturing process, an improper design or a failure to provide adequate warnings regarding the use of the product" (Stalker v Goodyear Tire & Rubber Co., 60 AD3d at 1174 [internal quotation marks, brackets and citation omitted]; see Barclay v Techno-Design, Inc., 129 AD3d 1177, 1178 [2015]). Here, the issues presented are limited to whether the remote control was defectively designed.
"In order to establish a prima facie case in strict products liability for design defects, the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing [the] plaintiff's injury" (Hall v Husky Farm Equip., Ltd., 92 AD3d 1188, 1188 [2012] [internal quotation marks and citations omitted]; see Barclay v Techno-Design, Inc., 129 AD3d at 1178). "A defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use" (Yun Tung Chow v Reckitt & Colman, Inc., 17 NY3d 29, 33 [2011] [internal quotation marks and citation omitted]; see Fisher v Multiquip, Inc., 96 AD3d 1190, 1193 [2012]). "To demonstrate a product was not 'reasonably safe,' the injured party must demonstrate both that there was a substantial likelihood of harm and that 'it was feasible to design the product in a safer manner'" (Barclay v Techno-Design, Inc., 129 AD3d at 1178-1179, citing Voss v Black & Decker Mfg. Co., 59 NY2d 102, 108 [1983]). "A claim may be defeated where a defendant demonstrates that the product's utility outweighs its risks because the product has been designed so that the risks are reduced to the greatest extent possible while retaining the product's inherent usefulness at an acceptable cost" (Barclay v Techno-Design, Inc., 129 AD3d at 1179 [internal quotation marks, brackets and citation omitted]).
In support of their motions for summary judgment, defendants offered expert affidavits of Anthony Bond and Robert J. Svare, both engineers. Bond explained that, when decedent was injured, he was using a two-part radio wireless control system consisting of a truck-mounted receiver unit and a separate radio control transmitter that allowed the operator to control "knuckle boom movement" from a safe distance. Svare personally examined, photographed and videotaped the equipment in question, including the radio remote control, and found that the system worked "flawlessly." Both Bond and Svare discussed, at length, the design of the subject radio remote control system, including its safety functions, and noted that the remote control was designed to permit the operator to stand safely outside of the zone of danger while operating the equipment. Both experts detailed the many design features that operated to prevent inadvertent engagement of the controls and provide the operator with several means to stop the operation of the equipment. Bond noted that the basic design and safety concept of the subject system is used by numerous other manufacturers both nationally and internationally. Bond's and Svare's affidavits reveal that a "dead man['s]" switch, or a switch that would need to be continuously pressed to enable the other levers to function, would be impractical, reduce safety and destroy the functionality of the remote control. Bond ultimately opined that decedent would not have been injured had he stood outside the area in which the boom could reach and that a dead man's switch "would not have prevented the accident under any set of facts." Svare opined that the accident in question was solely due to operator error.
Defendants also proffered deposition testimony of several other witnesses that revealed, among other things, that decedent was operating the boom and crane when he leaned forward, within the circumference of the boom, to make an adjustment to a chain, and, in leaning forward, the functions of the remote attached to decedent's hip were inadvertently activated, thus causing the boom to move and strike decedent on his hip and lower back, immediately knocking him to the ground. Testimony also revealed that decedent knew not to bend over while he had the remote on his person and had trained others not to do so as well. Testimony also established that the subject equipment was not defective and was fully operational after decedent's accident. There was also testimony of two witnesses with experience and knowledge of these systems who opined that a dead man's switch would be unsafe and hard to use. Testimony also revealed that dead man's switches are not commonly used on this kind of equipment.
As plaintiff concedes, these submissions were sufficient to shift the burden to her to show that there was substantial likelihood of harm and that it was feasible for defendants to design the product in a safer manner (see Barclay v Techno-Design, Inc., 129 AD3d at 1179-1180; Preston v Peter Luger Enters., Inc., 51 AD3d 1322, 1323 [2008]). In an attempt to "produce competent proof that the subject [remote control] as designed, was not reasonably safe" (Stalker v Goodyear Tire & Rubber Co., 60 AD3d at 1175 [internal quotation marks and citation omitted]), plaintiff relied on an affidavit of Stephen J. Derby, a mechanical engineer who averred that he has experience using robotic remote control devices and dead man's switches. Although Derby stated that he inspected the remote control used by decedent, in explaining the way that it functioned, he cited to decedent's examination before trial as well as the testimony of other witnesses. Derby opined that this incident occurred because the remote is defectively designed in that it did not contain a dead man's switch. According to Derby, it was foreseeable that, without a dead man's switch, inadvertently engaging a button, no matter the diligence of the individual operating the equipment, could cause personal injury and property damage. Derby additionally opined that the fact that the remote was designed to permit the operator to wear it, thus freeing the operator's hands, increased the likelihood that the operator would perform other work while on the job. Derby averred that the implementation of a dead man's switch would make the design safer and could be implemented in a number of ways, for example, by adding a separate button to the remote and by altering the design to feature joysticks instead of levers.
Bond, defendants' expert, submitted an expert reply affidavit in response to Derby's affidavit in which he points out that, although Derby claims that injury is foreseeable while working in close proximity to the boom crane, the operator of the remote control should never be within the zone of danger, and the remote should be turned off, something of which decedent was aware. Bond further clarified that the purpose of the remote is not to free the operator's hands so he or she can multitask, rather it is to provide the operator with stability for remote operation of the boom. In addition, Bond explained that the use of joysticks, as recommended by Derby, would require the operator to constantly engage one switch while performing other operations, thus complicating the actions of the operator and impairing the functionality of the remote. Accordingly, Derby's expert affidavit is insufficient to defeat summary judgment.
"An expert's affidavit — offered as the only evidence to defeat summary judgment — must contain sufficient allegations to demonstrate that the conclusions it contains are more than mere speculation, and would, if offered alone at trial, support a verdict in the proponent's favor" (Ramos v Howard Indus., Inc., 10 NY3d 218, 224 [2008] [internal quotation marks and citations omitted]). Initially, although Derby alleged that he inspected the remote, his affidavit was not supported by facts of his own independent testing of the device; rather, he relied on deposition testimony of other witnesses to explain the functions of the remote (see Rabon-Willimack v Robert Mondavi Corp., 73 AD3d 1007, 1009 [2010]). Furthermore, although Derby averred that the remote could be made safer by adding a dead man's switch or by implementing joysticks, he offered no proposed designs that could feasibly be installed (compare Fisher v Multiquip, Inc., 96 AD3d at 1194; Hall v Husky Farm Equip., Ltd., 92 AD3d at 1188), and, moreover, he pointed to no industry standards or data to support his conclusion that the absence of a dead man's switch rendered the remote unsafe (see Preston v Peter Luger Enterprises, Inc., 51 AD3d at 1325; D'Auguste v Shanty Hollow Corp., 26 AD3d 403, 404 [2006]). After all, "[a] factual issue regarding design defect is not established merely by pointing to efforts within the industry to make a safer product, without providing some detail as to how the current product is not reasonably safe and how a feasible alternative would be safer" (Stalker v Goodyear Tire & Rubber Co., 60 AD3d at 1175). Given Derby's failure to elaborate, and mindful of the testimony of multiple witnesses for defendants who averred that they were not aware of any remote controls in the industry that use a dead man's switch for crane operations, plaintiff's proof was insufficient to raise a triable issue regarding design defect (see Stalker v Goodyear Tire & Rubber Co., 60 AD3d at 1175; Preston v Peter Luger Enters., Inc., 51 AD3d at 1323).
Lynch, J.P., Clark, Devine and Colangelo, JJ., concur.
ORDERED that the order is affirmed, with one bill of costs.



Footnotes

Footnote 1: In the course of this litigation, on April 5, 2016, decendent died and plaintiff continued this action individually and as representative of decedent's estate.

Footnote 2:According to the president and founder of Hetronic Steuersysteme, Max Heckl, Hetronic Deutschland and Hetronic Steuersysteme are the same company. Multiple witnesses testified that the company began as Hetronic Steuersysteme but that its name eventually changed to Hetronic Deutschland.